[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2010
JOHN LEY
CLERK

_____

No. 08-12402

_____

D. C. Docket No. 06-00022-CR-OC-10-GRJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee
Cross-Appellant,

versus

WESLEY TRENT SNIPES,

Defendant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(July 16, 2010)

Before MARCUS, FAY and ANDERSON, Circuit Judges.

MARCUS, Circuit Judge:

Defendant Wesley Trent Snipes appeals from his criminal convictions, after a jury trial, on three counts of willful failure to file individual federal income tax returns for calendar years 1999, 2000, and 2001, in violation of 26 U.S.C. § 7203. Snipes alleges that the trial court committed reversible error in sentencing, jury instructions, and on issues of venue. After thorough review, we affirm the rulings and judgment of the district court in all respects.[1]

I.

The essential facts adduced at trial and the procedural history are these: Wesley Trent Snipes is a movie actor and owner of film production companies, including Amen RA Films and Kymberlyte Productions. Sometime around the year 2000, Snipes became involved in co-defendant Eddie Ray Kahn's organization, American Rights Litigators ("ARL"), that purported to assist customers in resisting the Internal Revenue Service ("IRS"). ARL employees, including co-defendant Douglas Rosile, and ARL members sent voluminous letters to the IRS, challenging the agency's authority to collect taxes. The centerpiece of this resistance was the "861 argument" that the domestic earnings of individual Americans do not qualify as "income" under 26 U.S.C. § 861, because the earnings

[1] The government has also cross-appealed the district court's denial of a "sophisticated means" enhancement in imposing Snipes's sentence, but says that this cross-appeal would be appropriate only if the Court concluded that the district court had erred in calculating Snipes's sentence. Because we can discern no error, the government's cross-appeal is moot.

2

do not come from a listed "source."[2]

The ARL message appeared to have found a welcome audience in Snipes. Although Snipes earned more than thirty-seven million dollars in gross income from 1999 to 2004, he did not file individual federal income tax returns for any of those years. These were not, however, silent years. After meeting with ARL, Snipes began a long conversation with the IRS. He sent treatises describing theories about why the IRS was powerless to collect income taxes from him and several altered tax forms demanding money for taxes he had rendered in earlier years. Thus, for example, in April 2001, Snipes sent an altered form 1040X, styled as an Amended United States Individual Income Tax Return, in which he demanded a refund of over seven million dollars for taxes paid for the calendar year 1997, allegedly paid in error.

Snipes's correspondence with the IRS advanced several arguments justifying his failure to file his personal tax returns, including that he was a "non-resident alien to the United States," that earned income must come from "sources wholly outside the United States," that "a taxpayer is defined by law as one who operates a distilled spirit Plant," and that the Internal Revenue Code's taxing authority "is

---

[2] Section 861 lists various types of revenue under the heading: "The following items of gross income shall be treated as income from sources within the United States." 26 U.S.C. § 861(a).

3

limited to the District of Columbia and insular possessions of the United States, exclusive of the 50 States of the Union." Snipes also claimed that as a "fiduciary of God, who is a 'nontaxpayer,'" he was a "'foreign diplomat'" who was not obliged to pay taxes. When Snipes consulted his long-time tax attorneys about his resistance to paying federal income taxes, they advised him that his position was contrary to the law and that he was required to file tax returns. The firm terminated Snipes as a client when Snipes refused to file his tax returns.[3]

Snipes's resistance to the IRS did not stop at his personal filings. Snipes integrated the ALR tax "teachings" into the accounting methodology of his film production companies. After June 2000, his companies stopped deducting payroll and income taxes from employees' salary checks. Snipes began to proselytize this theory of tax resistance. He invited several employees to an "861" educational seminar at his home. When accounts-payable employee Carmen Baker attended

---

[3] The government established at trial that Snipes also filed several other documents with the IRS and the United States Department of Treasury, demanding money. Thus, for example, on April 19, 2000, Snipes sent an altered form 1040X to the IRS, purporting to be a return for the calender year 1996 and requesting a refund of over four million dollars. After the IRS designated the return as frivolous, Snipes responded, through his representative. He threatened the IRS employee with disciplinary action and demanded the refund with interest. Snipes also sent four fraudulent "non-negotiable bills of exchange" to the United States Department of Treasury, demanding sums ranging from $27,485.31 to $12,000,000.00 as purported "discharge of the public debt." In lieu of tax returns, Snipes sent the IRS "Filing Statement[s] . . . in Affidavit Form" for several years that claimed, inter alia, that Snipes "ha[d] never been a 'United States citizen.'" In follow up letters to these "filing statements," Snipes purported to enter default judgment against the IRS for "failure to rebut" his claims.

the seminar and questioned the "861" theory, Snipes ordered her to leave his house, later telling her that he was "disappointed" in her and that if she was "not going to play along with the game plan," she should find another job.

The IRS launched a criminal investigation of Wesley Snipes after the agency received the April 2001 altered form 1040X for the year 1997, demanding refund of over seven million dollars based upon the "861" argument. On October 12, 2006, a grand jury sitting in the United States District Court for the Middle District of Florida returned a superseding indictment, charging Snipes and his two co-defendants, Eddie Ray Kahn and Douglas Rosile, with various crimes relating to a fraudulent tax scheme. Count One charged Snipes, Kahn, and Rosile with conspiracy to defraud the United States by impeding the IRS in its collection of income taxes, in violation of 18 U.S.C. § 371. Count Two charged all three defendants with filing a false claim for a refund of Snipes's taxes, in violation of 18 U.S.C. §§ 2 and 287. Counts Three through Eight charged Snipes alone with six counts of willfully failing to file his individual federal income tax returns for calendar years 1999 through 2004, in violation of 26 U.S.C. § 7203. Each defendant pled not guilty. Snipes surrendered voluntarily and was arraigned on December 8, 2006.

At the time of arraignment, a magistrate judge set a deadline for pretrial

motions for January 12, 2007. On January 12, Snipes moved for an extension of time to file motions, due to the complexity of the case and the need to analyze discovery. The magistrate judge granted the extension, resetting the motions deadline to June 4, 2007, and the trial date to October 2007. On June 4, 2007, Snipes filed several motions, including a motion to transfer venue to the Southern District of New York, under both 18 U.S.C. § 3237(b) and Federal Rule of Criminal Procedure 21(b).

The district court denied Snipes's motion for elective transfer under 18 U.S.C. § 3237(b) as untimely, because it had been filed more than five months past the twenty-day elective transfer period defined by § 3237(b). The district court also denied Snipes's motion to transfer venue under Federal Rule of Criminal Procedure 21(b), determining that Snipes's claim that his wife and children lived in his home in California was insufficient to overcome the hardship a transfer of venue would place on his significantly poorer co-defendants and on many Florida-based witnesses. On Snipes's motion for reconsideration of the venue issue, the court again denied the motion to transfer venue.

In early October 2007, Snipes moved for a continuance after he had fired his counsel for claimed incompetence and hired new lawyers. After the district court granted the continuance, Snipes's new lawyers challenged venue still again,

6

alleging that the government had chosen Ocala County, Florida, for trial for racially discriminatory reasons. Snipes again attempted to make a 18 U.S.C. § 3237(b) statutory transfer election, claiming that the district court could disregard the statutory twenty-day deadline because the ineffective assistance of his prior counsel constituted "good cause." The trial court denied both venue motions.

After the district court refused to conduct a pretrial evidentiary hearing on the issue of venue, Snipes lodged a notice of appeal with this Court on the venue-related orders. We denied this interlocutory appeal, concluding that an order pertaining to venue was effectively reviewable after the entry of judgment. United States v. Snipes, 512 F.3d 1301, 1302 (11th Cir. 2008).

The case proceeded to a fourteen-day trial in January 2008. At trial, an IRS witness testified that although Snipes had regularly filed individual federal income tax returns for the years 1993 through 1998, he had not filed any returns for calendar years 1999 through 2004.

IRS Special Agent Cameron Lalli testified extensively about the investigation of the alleged tax conspiracy. Agent Lalli described a telephone conversation with Snipes and his lawyer in May 2002, during which Agent Lalli had informed Snipes that Snipes was under investigation for tax crimes. When he read Snipes his non-custodial rights, which included the right to remain silent,

Snipes replied, "very interesting." In the course of the investigation, the grand jury served subpoenas on the office staff of Amen RA films. Former accounts-payable employee Carmen Baker testified at trial that when she received the grand jury subpoena, Snipes ordered her "not to respond, not to talk to anybody or to disclose any information on the company." When Baker asked Snipes why she should not respond, Snipes replied, "It doesn't matter. I have [a confidentiality agreement] with your signature on it. . . . [I]f you do contact them, you will have to pay the consequences." According to Baker, Snipes's warning made her feel "very upset," "uneasy," and "scared."

After the government rested its case, Snipes moved for a judgment of acquittal on only the false claim charge (Count Two) and the 1999 failure-to-file charge (Count Three).[4] The motion neither mentioned the first Count nor the other failure-to-file charges contained in Counts Four through Eight of the superseding indictment. The court denied the motions and the defense rested its case without presenting any evidence. The district court denied again any motion for judgment of acquittal at the end of the case.

---

[4] As for Count Two, Snipes submitted that the alteration of the jurat on the Form 1040X could not constitute a false claim under 18 U.S.C. § 287. The jurat, the certificate of oath preceding the signature on the tax form, read "[u]nder no penalties of perjury" in the Form 1040X Snipes submitted in 2001. As for Count Three, he argued that the 1999 failure-to-file charge was barred by the statute of limitations.

Snipes requested a specific jury instruction on venue for Counts Three through Eight. The district court granted Snipes's request in full, instructing the jury that the Sixth Amendment protects a defendant's right to a "trial in the state and district wherein the crime shall have been committed." The court instructed the jury that the government must prove venue -- the district of Snipes's legal residence -- by a preponderance of the evidence, and that the jury must acquit Snipes if the government had not met its burden.

Snipes also sought jury instructions on both general good faith and good faith reliance upon the advice of counsel to supplement the standard willfulness instructions. The district court granted these requests, too, and instructed the jury that "[g]ood faith is a complete defense to the charges in the indictment since good faith on the part of the Defendant is inconsistent with intent to defraud or willfulness which is an essential part of the charges." The judge reminded the jury that the government was obliged to prove willfulness beyond a reasonable doubt and that the defendant had no burden to prove good faith. The court also gave Snipes's good faith instruction on intent, telling the jury that "one who expresses an honestly held opinion or an honestly formed belief is not chargeable with fraudulent intent, even though the opinion is erroneous or the belief is mistaken." As for good faith reliance upon counsel, the trial court instructed that willfulness

9

could not be found if Snipes had consulted in good faith with an attorney and strictly complied with the attorney's advice.

Snipes also sought an instruction on good faith reliance based upon the Fifth Amendment, explaining that if he "had a good faith belief in his right to assert his [Fifth Amendment] privilege not to incriminate himself then [he] would not be guilty of acting willfully." Snipes claimed that he believed he had a Fifth Amendment privilege not to file his personal income tax returns because Special Agent Lalli advised him of his right to remain silent. The district court declined to give this instruction, observing that there was no evidence that Snipes had directly asserted his Fifth Amendment right as a basis for refusing to file his federal income tax returns. Snipes's counsel did, however, argue to the jury in closing that Snipes's reliance on Agent Lalli's pre-interview advice of rights constituted a good faith basis for his failure to file his individual income tax returns.

On February 1, 2008, the jury convicted co-defendants Kahn and Rosile on Counts One and Two (the conspiracy and false claim charges), but acquitted Snipes on the same charges. The jury convicted Snipes, however, on Counts Three, Four, and Five, for the willful failure to file individual federal income tax returns for calendar years 1999, 2000, and 2001. The jury acquitted Snipes on Counts Six, Seven, and Eight, the failure-to-file charges for 2002, 2003, and 2004.

10

The probation office's presentence investigation report ("PSI") recommended that Snipes be assigned a base offense level of 28 under U.S.S.G. §§ 2T1.1(a) and 2T4.1. The PSI measured Snipes's intended tax loss at $41,038,051, and assigned a two-level increase under U.S.S.G. § 2T1.1(b)(2), determining that Snipes had used sophisticated means to hide assets from taxation by using foreign accounts. The PSI also recommended a two-level increase pursuant to U.S.S.G. § 3C1.1, because Snipes had obstructed justice by directing Carmen Baker to conceal evidence from a federal grand jury investigation. Finally, the PSI recommended a guidelines sentence of thirty-six months' imprisonment. Snipes objected to the PSI's sentencing recommendations and challenged the PSI's reliance on any extra-verdict facts for enhancing his sentence. Snipes also objected that the obstruction of justice adjustment was unsupported, because Baker's testimony was unreliable.

The district court sentenced Snipes on April 24, 2008. Before the sentence was pronounced, Snipes challenged the tax sentencing regime, arguing that the Sentencing Commission had contravened 28 U.S.C. § 994(j) by not providing probation for non-serious offenses. The district court rejected this claim, observing that, although Snipes's crimes were not felonies, Congress had deemed them to be serious. The court also overruled Snipes's objection to the obstruction-of-justice enhancement. The court did, however, sustain Snipes's objection to a

11

sophisticated-means enhancement.  Snipes called several character witnesses who testified on his behalf.  The district court calculated the guidelines range, specifically observed that the Sentencing Guidelines were advisory, and discussed each of the factors enumerated in 18 U.S.C. § 3553(a).  The court sentenced Snipes to a total term of thirty-six months' imprisonment, comprised of three one-year terms for the failure-to-file convictions, to be served consecutively, followed by one year of supervised release and a $75 special assessment fee.

Snipes timely appealed and the government cross-appealed.

## II.

## A.

We examine first whether the district court erred by denying Snipes's June 4, 2007, statutory elective transfer under 18 U.S.C § 3237(b) as being untimely. Snipes claims that when the magistrate judge extended the pretrial motions deadline, the new deadline necessarily extended the period of time in which he was allowed to elect to transfer his trial.  This theory rests on the notion that Rule 12(c)'s provision that a district court may set deadlines for pretrial motions somehow supersedes § 3237(b)'s command that an election to be tried in the district in which the defendant resided must be filed within twenty days after

12

arraignment. Fed. R. Crim. P. 12(c).[5] Snipes also claims that the district court abused its discretion when it denied Snipes permission to make a late statutory elective transfer on the basis of his former counsel's "excusable neglect," under Federal Rule of Criminal Procedure 45(b)(1)(B).

We review a district court's denial of a motion on the grounds of untimeliness for abuse of discretion. United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990). However, we review de novo Snipes's argument that Rule 12(c) of the Federal Rules of Criminal Procedure supersedes the twenty-day deadline contained in § 3237(b). United States v. Jackson, 544 F.3d 1176, 1181 n.1 (11th Cir. 2008) (per curiam).

The proper venue for the crime of willfully failing to file an individual federal income tax return, in violation of 26 U.S.C. § 7203, is either the federal judicial district in which the defendant resided at the time of the offense or the judicial district of the designated service center. United States v. Calhoun, 566 F.2d 969, 973 (5th Cir. 1978).[6] Title 18 U.S.C., § 3237(b) provides that a defendant facing a failure to file charge

---

[5] Fed. R. Crim. P. 12(c) provides that "[t]he court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing."

[6] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent the decisions of the former Fifth Circuit rendered before the close of business on September 30, 1981.

may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed: Provided, That the motion is filed within twenty days after arraignment of the defendant upon indictment or information.

Congress placed particular emphasis on the deadline, underlining the limiting word "provided" in the text of the statute. The deadline was specified "[i]n order to prevent dilatory transfers by defendants." S. Rep. 85-1952, at 3 (1958), reprinted in 1958 U.S.C.C.A.N. 3261, 3263.

In the first place, "[c]ourts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language." United States v. Albertini, 472 U.S. 675, 680 (1985). Section 3237(b)'s twenty-day statutory deadline for an elective transfer is unambiguous and unqualified. See Abrams v. McGohey, 260 F.2d 892, 893-94 (2d Cir. 1958) (per curiam). The Supreme Court has strictly construed clear statutory deadlines limiting periods for filing motions in criminal cases, holding that there is "simply no room in the text" of more general criminal rules to supersede Congress's clear directions in criminal statutes. See Carlisle v. United States, 517 U.S. 416, 421 (1996). Unlike deadlines derived only from Court rules, statutory deadlines that "achieve a broader system-related goal" are "more absolute." See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34 (2008). The unmistakeable statutory deadline in § 3237(b) cannot be

14

waived by a general extension of the motions deadline under Rule 12(c). The language employed by Congress is fatal to this claim.

We add that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." Morton v. Mancari, 417 U.S. 535, 550-51 (1974). Plainly, Congress showed no "intention," clear or otherwise, that Rule 12(c) would control the tax statute; the rule of procedure never even mentions the crime of failure to file a federal income tax return. It merely affords the district court the discretion to set pretrial deadlines. Section 3237(b), in sharp contrast, is specific to the offense at hand and is a controlling exception to Rule 12(c)'s discretion. See ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc., 504 F.3d 1208, 1210 (11th Cir. 2007).

Indeed, construing Rule 12(c) to supersede the command of Congress embodied in § 3237(b)'s unambiguous deadline would repeal, by judicial fiat, an unambiguous provision found in a congressional enactment. Because the general extension of the motions deadline could not have waived § 3237(b)'s clear twenty-day deadline, the district court's denial of the five-month late elective transfer motion was not an abuse of discretion.

Nor did the district court abuse its discretion by refusing to grant a waiver of the statutory deadline on the theory of "excusable neglect" under Rule 45 of the

15

Federal Rules of Criminal Procedure because Snipes's original attorney misunderstood the import of the statutory elective transfer deadline. "[C]ounsel's misunderstanding of the law cannot constitute excusable neglect." Corwin v. Walt Disney Co., 475 F.3d 1239, 1255 (11th Cir. 2007) (citation and quotation marks omitted).

Finally, it would not have been reasonable anyway to read Snipes's general request for an extension of time to file motions as a request to suspend the § 3237(b) transfer deadline. Snipes's putative motion for elective transfer would already have been two weeks late when his attorneys first requested an extension of time to file motions. The twenty-day deadline for the § 3237(b) election expired on December 28, 2006; Snipes's motion for extension of time to file pretrial motions was not filed until January 12, 2007. Indeed, Snipes's motion for extension of the pretrial motions deadline did not discuss the § 3237(b) venue election at all. In short, there is no indication that even Snipes considered a § 3237(b) transfer election to be governed by the pretrial motions deadline at the time that he moved for the extension.

B.

Snipes also argues that the district court abused its discretion by not conducting a pretrial evidentiary hearing -- essentially, a bench trial -- on venue.

16

He says that a pretrial evidentiary hearing was essential because, if the choice of venue were improper, a jury sitting in the Middle District of Florida would be the wrong decision-maker to decide the question. This claim purportedly has a constitutional dimension: Snipes submits that by denying a pretrial evidentiary hearing, the district court forced him to choose between presenting the best evidence -- his own testimony -- on this disputed fact and invoking his Fifth Amendment privilege against self-incrimination.

We review for abuse of discretion the district court's denial of a pretrial motion for an evidentiary hearing to challenge venue. United States v. Diaz, 811 F.2d 1412, 1414 (11th Cir. 1987). However, we review Snipes's argument that the denial of a pretrial evidentiary hearing violated his Fifth Amendment rights de novo. United States v. Brown, 364 F.3d 1266, 1268 (11th Cir. 2004).

It is by now well-settled that venue is an essential element of the government's proof at trial. "[Q]uestions of venue . . . are not to be taken lightly or treated as mere technicalities . . . ." United States v. White, 611 F.2d 531, 534 (5th Cir. 1980). "The Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure guarantee defendants the right to be tried in the district in which the crime was committed." United States v. Breitweiser, 357 F.3d 1249, 1253 (11th Cir. 2004).

As with resolving other important elements contained in a charge, a jury must decide whether the venue was proper. See Green v. United States, 309 F.2d 852, 857 (5th Cir. 1962) ("We hold that the trial court erred in failing to submit the question of venue to the jury."). See also United States v. Stickle, 454 F.3d 1265, 1273 (11th Cir. 2006); United States v. Muhammad, 502 F.3d 646, 656 (7th Cir. 2007). In this case, the grand jury returned a facially sufficient indictment, with a clear statement of venue. Counts Three through Eight identified both Snipes's residence (Windermere, Florida) and the location of the crime (the Middle District of Florida). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956) (footnote omitted).

Indeed, it would not have been proper for the district court to find the appropriate venue in a pretrial evidentiary hearing. "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987). To permit preliminary trials on essential facts, post-indictment, would "run counter to the whole history of the grand jury

18

institution, . . . [and] would result in interminable delay but add nothing to the assurance of a fair trial." Costello, 350 U.S. at 363-64.

Snipes argues, nevertheless, that under Simmons v. United States, 390 U.S. 377, 389-94 (1968), a pretrial hearing was necessary because a defendant cannot be forced to cede his Fifth Amendment right against self-incrimination in order to enforce his right to testify about venue at trial. In Simmons, the Supreme Court held that a defendant's testimony in a Fourth Amendment pretrial suppression hearing cannot be admitted in trial without violating the Fifth Amendment privilege against self-incrimination; it was "intolerable that one constitutional right should have to be surrendered in order to assert another." Id. at 394.

However, Simmons has never been extended beyond its context. See In re Federal Grand Jury Proceedings, 975 F.2d 1488, 1492-93 (11th Cir. 1992). Only three years after the Simmons decision, in McGautha v. California, the Supreme Court itself questioned Simmons's rationale of the "intolerable tension" between constitutional rights, explaining that the application of this reasoning was "open to question." McGautha v. California, 402 U.S. 183, 212-13 (1971), vacated in part on other grounds sub nom. Crampton v. Ohio, 408 U.S. 941 (1972). The Supreme Court observed that in many criminal contexts, such as choosing between forgoing testimony at trial or having one's prior criminal acts disclosed, a defendant must

19

make a choice between competing rights. Id. at 214-15. The Supreme Court explained that even though "a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." Id. at 213.

Snipes's Sixth Amendment rights were not impaired in this case. Unlike the Fourth Amendment right, protected by the exclusionary rule, the Sixth Amendment right to have venue proven as an element of the offense is safeguarded by integrating it into the trial. Snipes had a constitutional right to have venue decided by the jury. It did just that. Both parties presented evidence on venue at trial in great detail. Moreover, the district court fully instructed the jury that venue is an element of the offense and that Snipes must be acquitted if the government failed to establish venue by a preponderance of the evidence. There was no abuse of discretion in refusing to grant a novel pretrial, post-grand jury hearing to challenge the claimed venue found in a facially sufficient indictment.[7]

---

[7] In a final challenge to venue, Snipes claims that the district court should have entered a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 for insufficient evidence on venue. But because Snipes's Rule 29 motion only raised evidentiary issues concerning the false claim charge and whether the statute of limitations had expired, we review this issue only for plain error and may reverse only if the error is plain, affects Snipes's substantial rights, and seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Bernal-Benitez, 594 F.3d 1303, 1312 n.6 (11th Cir. 2010). There is

C.

Snipes also claims that the district court abused its considerable discretion in declining to give an instruction on Snipes's purported good faith reliance on his Fifth Amendment privilege against self-incrimination. At trial, defense counsel argued that after Agent Lalli had read Snipes his non-custodial rights in May 2002, Snipes believed the "right to remain silent" allowed him to refuse to file his individual federal income tax returns.

A district court has "broad discretion in formulating jury instructions."

United States v. Mintmire, 507 F.3d 1273, 1293 (11th Cir. 2007).

> In reviewing the denial of a requested jury instruction, we consider whether that instruction: (1) was a correct statement of the law; (2) was not adequately covered in the instructions given to the jury; (3) concerned an issue so substantive that its omission impaired the accused's ability to present a defense; and (4) dealt with an issue properly before the jury.

United States v. Lyons, 53 F.3d 1198, 1200 (11th Cir. 1995). The government concedes that Snipes's proposed jury instruction was substantially correct. Nevertheless, Snipes's assignment of error fails.

It is uncontested that willfulness is an important element of 26 U.S.C. §

---

no plain error here. In establishing venue by a preponderance, United States v. Wuagneux, 683 F.2d 1343, 1356-57 (11th Cir. 1982), the government provided ample evidence from which the jury could conclude that Snipes was a Florida resident. Among other evidence, the government showed that Snipes was born in Florida, had maintained a Florida driver's license since 1978, and had averred in several formal documents that his residency was Florida. This is enough to meet a preponderance of the evidence.

7203, <u>Cheek v. United States</u>, 498 U.S. 192, 193-94 (1991), and that "a good faith claim of privilege against self-incrimination, although erroneous, is a defense to the element of willfulness." <u>United States v. Goetz</u>, 746 F.2d 705, 710 (11th Cir. 1984). "[T]he word 'willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty." <u>United States v. Bishop</u>, 412 U.S. 346, 360 (1973). <u>See also</u> <u>United States v. Morris</u>, 20 F.3d 1111, 1114 (11th Cir. 1994) ("The standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'") (quoting <u>Cheek</u>, 498 U.S. at 202) (footnote omitted).

The district court's instructions were adequate first because the issue of whether Snipes asserted the Fifth Amendment privilege was not before the jury on the counts for which he was convicted. When Special Agent Lalli read Snipes his non-custodial rights in May 2002, Snipes was already legally obligated to have filed his individual federal income tax returns for the calendar years 1999, 2000, and 2001. Snipes was only convicted of willful failure to file individual federal income tax returns for these three years, contained in Counts Three, Four, and Five. The Fifth Amendment good faith defense -- grounded in the <u>subsequent</u> May 2002 advice of rights -- could not have been relevant to any of the charges of conviction.

22

Moreover, the good faith and willfulness instructions that the district court delivered were altogether sufficient to cover the good faith reliance on the Fifth Amendment argument anyway. The court instructed the jury that good faith is a complete defense to the charges in the indictment. The court reinforced that Snipes was under no burden of proving good faith: it was the government's duty to prove that he acted willfully. Further, the court gave the jury Snipes's proposed language on intent, instructing that "one who expresses an honestly held opinion or an honestly formed belief is not chargeable with fraudulent intent, even though the opinion is erroneous or the belief is mistaken." Even though the district court did not specifically identify good faith reliance on the Fifth Amendment in the instruction, the good faith instruction was thorough and substantially covered Snipes's proposed instruction. Contrast Morris, 20 F.3d at 1117 (holding that it was error for the district court to refuse to give a general good faith jury instruction at all).

When the instructions omitted are "substantially covered by other instructions which were delivered by the district court," there can be no reversible error. United States v. Stone, 702 F.2d 1333, 1339 (11th Cir. 1983). Thus, for example, in United States v. Pomponio, the Supreme Court affirmed convictions for willfully filing false income tax returns despite the judge's refusal to give a

23

good faith instruction: "The trial judge in the instant case adequately instructed the jury on willfulness. An additional instruction on good faith was unnecessary." 429 U.S. 10, 13 (1976) (per curiam). See also United States v. Jordan, 582 F.3d 1239, 1248 (11th Cir. 2009) ("The court did not abuse its discretion in declining to give [the defendant's good faith instructions] because their concepts were substantially included in the instruction that the criminal act must be done 'knowingly' or 'willfully.'"); United States v. Johnson, 577 F.2d 1304, 1312 (5th Cir. 1978) (no reversible error in a district court's refusal to give an instruction on the defendant's good faith reliance on his constitutional rights because the jury was instructed both on willfulness and good faith); United States v. McCarty, 665 F.2d 596, 597 & 597 n.2 (5th Cir. 1982) (affirming tax conviction where judge gave general good faith and willfulness instructions, but did not instruct on a good faith reliance on Constitutional rights). Pomponio, Jordan, and Johnson are controlling here: the instructions concerning general good faith, good faith reliance on counsel, and willfulness sufficiently addressed Snipes's argument that he relied in good faith on the Fifth Amendment

Finally, the omission of the instruction in no way "impaired the accused's ability to present a defense." Lyons, 53 F.3d at 1200. The district court allowed Snipes's attorneys to thoroughly cross-examine witnesses on the subject of

24

Snipes's good faith reliance on the Fifth Amendment. And defense counsel squarely presented the argument to the jury in closing. Contrast Goetz, 746 F.2d at 712 (holding that the court's refusal to allow the defendant to present evidence of good faith was error in a 26 U.S.C. § 7203 prosecution). Indeed, the defense was arguably successful: the jury acquitted Snipes of the willful failure-to-file charges for 2002, 2003, and 2004, the years that followed Special Agent Lalli's May 2002 advice of rights.

D.

As for sentencing errors, Snipes first claims that the district court erred in sentencing him pursuant to U.S.S.G. § 2T1.1. According to Snipes, Section 2T1.1 is invalid because it (1) violates Title 28 U.S.C. § 994(j)'s prescription that a misdemeanor be treated as a less serious offense; (2) creates unwarranted disparity in contravention of 28 U.S.C. § 991(b)(1)(B); and (3) is not the product of careful empirical evidence.

We review this legal claim de novo. United States v. Ndiaye, 434 F.3d 1270, 1280 (11th Cir. 2006). Section 994(j) provides, "[t]he Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious

25

offense." 28 U.S.C. § 994(j) (emphasis added). Snipes argues that a 26 U.S.C. § 7203 misdemeanor offense is a less serious offense for which no first-time offender should be awarded jail time.

Section 2T1.1 (the Sentencing Guideline for willful failure to file returns) directs the district court to calculate the offense level for the advisory guideline range with the use of the Tax Table (§ 2T4.1) that measures the tax loss and an assessment of specific offense characteristics. Section 2T1.1 embodies a change from pre-guidelines sentencing practice. Although under "[u]nder pre-guidelines practice, roughly half of all tax evaders were sentenced to probation without imprisonment, . . . [§ 2T1.1] is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length." U.S.S.G. § 2T1.1 comment. (backg'd).

As for seriousness, Snipes's argument that § 2T1.1 conflicts with § 994(j) misapprehends the structure of the Sentencing Guidelines. Section 2T1.1 works in concert with other sections of the Guidelines to allow an award of probation to first-time offenders who committed less serious offenses. Principally, § 2T4.1 allows a district court to measure the tax loss and pin the offense level to that loss. The table found in § 2T4.1 assigns a modest offense level of 6 to tax losses of $2,000 or less and, not surprisingly, increases the offense level as the tax loss

26

increases. Thus, a defendant who caused a tax loss of more than $400,000,000 or more would receive an offense level of 36. If the tax loss were not serious, a first time offender might well be assigned an offense level for which probation would be appropriate. Similarly, § 4A1.1 allows the district court to assess the defendant's criminal history; less serious criminal histories mitigate § 2T1.1's reach.

This graduated penalty structure reflects the Sentencing Commission's assessment that a "greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics." U.S.S.G. § 2T1.1, comment. (backg'd). Thus, the Commission complied fully with § 994(j) by ensuring that the tax offense "guidelines reflect the general appropriateness of imposing a sentence other than imprisonment" for first time offenders who have committed less serious crimes. 28 U.S.C. § 994(j). If the defendant's crime were not "serious" because the tax loss was minor and if his criminal history so warranted, the guidelines would advise a sentence of probation. In contrast, if the tax loss were high and thus more "serious" and "harmful to the treasury," as it was in this case, the guidelines would advise a longer sentence. Snipes merely disputes Congress's and the Commission's assessment of major tax losses as serious. We are unpersuaded.

Snipes's challenge to Section 2T1.1 on disparity grounds is also unsuccessful. Snipes claims that "[b]y treating misdemeanors the same as felonies, the tax guidelines violate" 28 U.S.C. § 991(b)(1)(B). Yet Congress was concerned about the disparity of sentences "among defendants with similar records who have been found guilty of similar criminal conduct," not between misdemeanants and felons. Id. The district court noted that misdemeanants who, like Snipes, had willfully failed to file their personal income tax returns had engaged in similar behavior to the felons who had received similar sentences. The guideline does not create disparity of the kind that would violate 28 U.S.C. § 991(b)(1)(B).

Finally, Snipes's claim that § 2T1.1 is not the product of careful empirical evidence is also incorrect. To begin with, the absence of empirical evidence is not an independent ground that compels the invalidation of a guideline. In Kimbrough v. United States, 552 U.S. 85 (2007), the Supreme Court disapproved of the crack cocaine guideline in part because it was not based on empirical evidence, but the Court did not invalidate the guideline. Id. at 96, 109-10. Instead, the Supreme Court held that the lack of empirical evidence was one factor that a district court could consider in exercising its post-Booker right to depart from the guidelines. Id. at 109-10. The lack of empirical evidence would not require the wholesale invalidation of sentencing guidelines.

28

Further, although Snipes correctly notes that the revised Guidelines reflect a change from pre-Guideline sentencing procedures, U.S.S.G. § 2T1.1 comment. (backg'd), that does not mean that the Commission performed no empirical analysis when it increased sentences for tax offenses. According to the Sentencing Commission, Section 2T1.1 was created after empirical analysis of sentences for white-collar crimes. The Commission compared sentences for tax crimes and other white-collar crimes, such as embezzlement, with similar crimes, such as larceny, and discovered that the white-collar crimes were given "considerably lower" sentences. U.S. Sentencing Comm'n, Supplementary Report On the Initial Sentencing Guidelines and Policy Statements 18 (1987). The change to increase sentences for offenders who had caused major tax losses was adopted "[i]n light of the legislative history supporting higher sentences for white-collar crime." Id. (citing S. Rep. No. 225, 98th Cong., 1st Sess., 177 (1983)). Thus, Snipes's suggestion that Section 2T1.1 was not based on empirical evidence is unavailing.

The district court did not err in applying U.S.S.G § 2T1.1 to Snipes's crimes.

E.

Snipes says next that the district court erred in imposing a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. The enhancement was based on Snipes's instruction to Amen RA employee Carmen Baker not to

29

respond to a grand jury subpoena. Snipes warned her that she would have to "pay the consequences" if she cooperated with the federal tax investigation. Snipes argues that because the subpoena was never entered into evidence, the government did not prove that the subpoena actually related to the charges in the indictment. Snipes also benignly characterizes the phrase "pay the consequences" as a reference to potential legal action that Baker might face for breach of a confidentiality agreement.

We review a district court's factual finding of obstruction of justice for clear error. United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006). The application of U.S.S.G. § 3C1.1 to those factual findings is reviewed de novo. Id.

The district court did not clearly err in finding the evidence was sufficient to establish that the subpoena was related to the charged tax offenses. Although the grand jury subpoena was never placed into evidence, it is undisputed that the subpoena was delivered by the investigating IRS agent to a former employee of Snipes's film company, Amen RA, in an attempt to obtain records about Amen RA. And Baker testified that Snipes "told [her] not to respond, not to talk to anybody or to disclose any information on the company." The context of the subpoena's delivery, Baker's response, and Snipes's comments were sufficient to allow the trial court to determine that the subpoena was related to the tax

30

investigation.

The district court also did not err in finding that Snipes's instruction to Baker to refuse to comply with the subpoena and his threat that "if you do contact them, you will have to pay the consequences" constituted obstruction of justice. We have long held that encouraging another person to avoid complying with a grand jury subpoena may be considered to be obstruction. United States v. Rudisill, 187 F.3d 1260, 1263-64 (11th Cir. 1999) (upholding obstruction enhancement where the defendant encouraged a witness to flee instead of complying with a grand jury subpoena); United States v. Garcia, 13 F.3d 1464, 1471 (11th Cir. 1994) (upholding obstruction enhancement where the defendant brought a witness into a walk-in freezer and asked him not to speak with the FBI). The commentary to the Guidelines describes this kind of conduct as amounting to obstruction: "(a) threatening, intimidating, or otherwise unlawfully influencing a . . . witness, . . . directly or indirectly, or attempting to do so";  and (d) "directing or procuring another person to destroy or conceal evidence that is material to an official investigation."  U.S.S.G. § 3C1.1 comment. (n.4(a) and (d)).  The application of this Guideline was not legal error.[8]

---

[8] Snipes also argues that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), the district court erred in sentencing because the jury made no findings about either the extent of the tax loss or obstruction of justice.  Apprendi held that, other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

F.

Finally, we address whether Snipes's thirty-six month prison sentence was unreasonable because the district court allegedly placed undue reliance on general deterrence as a sentencing factor under 18 U.S.C. § 3553(a). Snipes insists that the only reasonable sentence for his failure to file convictions would have been a period of probation.

In reviewing reasonableness, we begin by examining the procedural reasonableness of a sentence, ensuring "that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). Under Gall, the sentencing judge must "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 552 U.S. at 49-50. "[A] district court's unjustified reliance on any one Section 3553(a)

_____

submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. However, "the use of extra-verdict enhancements in a non-mandatory guidelines system is not unconstitutional." United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir. 2005). Since the district court correctly observed that the guidelines were purely advisory, Apprendi does not apply to this case.

32

factor may be a symptom of an unreasonable sentence," Pugh, 515 F.3d at 1191, although attaching great weight to any one factor does "not necessarily make a sentence unreasonable." Id. at 1192.

Here, the district court carefully complied with the sentencing procedures. The judge conducted an extensive sentencing hearing and listened to Snipes's allocution, several character witnesses, and argument about sentencing. The court correctly calculated the guideline range and, again, noted that the guidelines were advisory. The sentencing transcript reveals that the judge weighed each factor embodied in the Section 3553(a) calculus before pronouncing the sentence, which was within the recommended guideline range. The sentence was not procedurally unreasonable.

Next, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. at 1190 (quoting Gall, 552 U.S. at 51). "[W]e will not second guess the weight (or lack thereof) that the judge accorded to a given factor . . . [under § 3553(a)], as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." Id. at 1191 (citation and quotation marks omitted). The party challenging a sentence has the burden of establishing that it was unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

33

The district court gave ample consideration to each of the relevant considerations found in 3553(a).  Although the discussion about general deterrence was somewhat longer than the discussion of the other factors, its length corresponds with the emphasis the Sentencing Guidelines placed on deterrence in the criminal tax context. The introductory commentary to the Tax section of the Sentencing Guidelines explains that

> [b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. Ch. 2 Pt. T, intro. Comment (emphasis added).

Moreover, "[w]hen the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Talley, 431 F.3d at 788.  See also Rita v. United States, 551 U.S. 338, 347 (2007). Although Snipes argues that there were mitigating factors that the judge did not specifically mention at sentencing, these facts -- his college education, his family, and his charitable activities -- do not compel the conclusion that the sentence crafted in accordance with the 18 U.S.C. § 3553(a) factors was substantively unreasonable.  The district court acted well within its considerable discretion in sentencing Snipes to thirty-six months in prison.

**AFFIRMED.**