[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11597
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00031-WCO-JCF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS MARTINEZ-LOPEZ,
a.k.a. Fredy Misancango-Cajoban,

Defendant-Appellant.

_____

No. 14-11598
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00041-WCO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS MARTINEZ-LOPEZ,
a.k.a. Ciriaco Baltazar Villa,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(January 9, 2015)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Carlos Martinez-Lopez appeals his total seventy-two-month sentence, after pleading guilty to one count of illegal reentry of a deported undocumented immigrant, in violation of 8 U.S.C. § 1326(a), (b)(2), and two counts of transportation of undocumented immigrants, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  Martinez-Lopez also appeals the district court's imposition of a ten-month sentence to be served consecutive to his seventy-two-month sentence for violating the conditions of his supervised release from a subsequent conviction. After careful review of the record and consideration of the parties' briefs, we conclude that the sentence was procedurally and substantively reasonable. Accordingly, we affirm Martinez-Lopez's seventy-two-month sentence and his consecutive ten-month revocation sentence.

I.

Martinez-Lopez first came to the United States, entering through California,

2

when he was approximately twenty-four years of age.  He eventually moved to Texas and was employed by Handyman Construction in Houston.  In 2012, Martinez-Lopez was arrested and pleaded guilty in the Northern District of Mississippi for the same criminal conduct that he currently pleads guilty to in this appeal—providing transportation to undocumented immigrants within the United States and for reentry of a removed undocumented immigrant.  For these convictions, Martinez-Lopez was sentenced to thirteen months' imprisonment with an additional three-year term of supervised release.  On January 8, 2013, Martinez-Lopez was released from custody, began serving his term of supervised release, and, on the same day, was also deported.  Martinez-Lopez returned to Mexico to continue work in the construction industry.

Upon his return to the United States and until the time of his arrest in the instant case, Martinez-Lopez resumed work at Handyman Construction.  In May 2013, local law enforcement officers stopped a sport utility vehicle (SUV) in which Martinez-Lopez was driving with twelve undocumented immigrants as passengers. When officers requested that Martinez-Lopez present his identification, he identified himself as Fredy Misancango-Cajoban, and stated that he and his passengers were traveling from Tennessee to North Carolina to seek employment. When officers attempted to place him under arrest, Martinez-Lopez fled into a nearby wooded area and was not apprehended until approximately five hours later.

3

While being questioned by agents from the Department of Homeland Security, Martinez-Lopez provided his real name. He admitted that he was a citizen of Mexico, that he had previously been removed from the United States, and that he had been living in Texas for the past three months. He also admitted to knowing that the passengers in his vehicle were likely undocumented immigrants. Martinez-Lopez claimed that he had not been paid for transporting the undocumented immigrants. However, two of the undocumented immigrants claimed that they paid $1,500.00 to be transported from Texas to New Jersey— neither indicated whether the money was paid to Martinez-Lopez directly. At least one other undocumented immigrant claimed he was traveling from Texas to New York, but he claimed that he did not know the cost of his transportation because, according to him, his father made the arrangements.

On appeal, Martinez-Lopez argues that his total sentence for the instant convictions was procedurally and substantively unreasonable for several reasons. First, Martinez-Lopez asserts that the district court erred in denying him a three-level reduction, pursuant to U.S.S.G. § 2L1.1(b)(1)(A), because the offense was committed for reasons other than for profit. Second, Martinez-Lopez contends that the district court erred in imposing a two-level enhancement, pursuant to § 2L1.1(b)(6), because his conduct did not create a substantial risk of death or serious bodily injury. Third, Martinez-Lopez argues that his sentence is

4

substantively unreasonable not only because of the arguments raised above in issues one and two, but also because the Guidelines for illegal reentry are unduly harsh and are not based on empirical evidence. Fourth, Martinez-Lopez asserts that the ten-month sentence to be served consecutively to his instant seventy-two-month sentence for violating the conditions of supervised release for a subsequent conviction was greater than necessary. Finally, Martinez-Lopez contends that the district court erred in imposing a fine because he lacks the present or future ability to pay.

## II.

We begin by addressing Martinez-Lopez's contentions that the district court erred when it denied him a three-level reduction pursuant to § 2L1.1(b)(1)(A), because the offense was committed for reasons other than for profit. We review a district court's interpretation of the Guidelines and application of the Guidelines to the facts de novo, and review its findings of fact for clear error. *United States v. Barrington*, 648 F.3d 1178, 1194–95 (11th Cir. 2011). A factual finding is clearly erroneous when, upon review of the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Id.* at 1195 (internal quotation marks omitted). The defendant bears the burden of establishing the facts necessary to support a sentencing reduction by a preponderance of the evidence. *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007); *see also United*

5

*States v. Zaldivar*, 615 F.3d 1346, 1352 (11th Cir. 2010) (defendant bears the burden of proving that he committed the offense other than for profit).  Under the preponderance of the evidence standard, the trier of fact must believe that the existence of a fact is more probable than not.  *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir.), *cert. denied*, 133 S. Ct. 629 (2012).

Section 2L1.1(b)(1) provides for a three-level decrease in the defendant's base offense level if the offense was committed other than for profit or involved only the transportation of the defendant's spouse or child.  *See* U.S.S.G. § 2L1.1(b)(1).  An offense is committed other than for profit if there was neither a payment nor an expectation of payment for the transportation of any of the undocumented immigrants.  *Id.* at cmt. n.1.  We have declined to reverse a district court's refusal to apply this three-level reduction where the defendant stated that he never received payment for his involvement in a smuggling operation, but some of the undocumented immigrants testified that they expected to pay for their transportation.  *Zaldivar*, 615 F.3d at 1352.

Martinez-Lopez did not put forward any affirmative evidence to suggest that he transported the undocumented immigrants for a reason other than profit.  Even in the absence of evidence to suggest that Martinez-Lopez was paid directly, at least two of the undocumented immigrants admitted to having paid $1,500.00 for their transportation.  *See id.*  Pursuant to the Sentencing Guidelines, an

"expectation of payment" is enough to support a denial of the three-level reduction. *See* U.S.S.G. § 2L1.1 cmt. n.1. The record suggests that such an expectation existed since Martinez-Lopez was required to travel great distances to transport a number of undocumented immigrants, none of whom were members of his family or people that he knew, and all of whom were dangerously crammed into an SUV that lacked the capacity to accommodate each passenger safely. Under these circumstances, we are not left with a definite and firm conviction that a mistake has been made. *See Barrington*, 648 F.3d at 1195. This is especially true since Martinez-Lopez has failed to put forth facts to support a conclusion that, more likely than not, the offense was committed other than for profit or involved only the transportation of his spouse or child. *See id*. § 2L1.1(b)(1); *see also Perez-Oliveros*, 479 F.3d at 783. Therefore, the district court did not clearly err in denying Martinez-Lopez a three-level reduction.

## III.

Next, we address Martinez-Lopez's contention that the district court's imposition of a two-level enhancement pursuant to § 2L1.1(b)(6) was procedurally unreasonable, because his conduct did not create a substantial risk of death or serious bodily injury. We review a district court's determination that the defendant's conduct created a risk of death or serious bodily injury for clear error. *United States v. Caraballo*, 595 F.3d 1214, 1230 (11th Cir. 2010). The

government bears the burden of establishing the facts necessary to support a sentencing enhancement by a preponderance of the evidence. *Perez-Oliveros*, 479 F.3d at 783. Section 2L1.1(b)(6) provides for a two-level increase in a defendant's base offense level if the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person. U.S.S.G. § 2L1.1(b)(6). The commentary to § 2L1.1 states that the enhancement applies to a wide variety of conduct, including "carrying substantially more passengers than the rated capacity of a motor vehicle [or] harboring persons in a crowded, dangerous, or inhumane condition." *Id.*§ 2L1.1 cmt. n.5. We have upheld the application of the § 2L1.1(b)(6) enhancement where the defendant transported eleven undocumented immigrants in cramped conditions on a small vessel without enough life jackets. *See Caraballo*, 595 F.3d at 1230–31; s*ee also United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 (11th Cir. 2004) (affirming application of the enhancement for the hazardous transportation of undocumented immigrants by boat; explaining that there is "no material distinction" between smugglers who transport undocumented immigrants on land without seatbelts and those who transport them on water without life jackets); *see also United States v. Ortiz*, 242 F.3d 1078, 1079 (8th Cir. 2001) (per curiam) (affirming application of the enhancement when twenty-three undocumented immigrants were transported in a van equipped with only fourteen seatbelts)

Here, the record clearly demonstrates that Martinez-Lopez was carrying significantly more passengers (twelve to be exact) than the rated capacity of his vehicle. At most, Martinez-Lopez's vehicle had seating for a total of eight people with the third row of seats installed. Therefore, even with all of the seats installed, Martinez-Lopez was carrying at least four extra passengers—sixty-six percent more passengers than the rated capacity of the vehicle. What is worse, the evidence showed that the third row of seats was not even installed at the time of Martinez-Lopez's arrest. This means that there were in fact seven passengers that were tightly packed into the cargo area of the vehicle without seats or seatbelts. Consequently, these undocumented immigrants were subjected to crowded and inhumane conditions and an increased risk of death or serious injury in the event of an accident—especially a rear-end collision. *See Caraballo*, 595 F.3d at 1230–31; *Rodriguez-Lopez*, 363 F.3d at 1138. Accordingly, the district did not commit clear error when it applied the § 2L1.1(b)(6) enhancement because Martinez-Lopez's conduct created a substantial risk of death or serious bodily injury.

## IV.

Next, we confront Martinez-Lopez's arguments that the Guidelines for illegal re-entry lack grounding in empirical data, are unduly harsh, and, as a result, are substantively unreasonable. Martinez-Lopez also argues that his sentence essentially reflects improper double-counting of his criminal history.

For ease of reference, we address the issues in this subsection in turn.

## A.

We address first Martinez-Lopez's claim that the Guidelines for illegal re-entry lack grounding in empirical data, are unduly harsh, and, as a result, are substantively unreasonable. Since we concluded above that Martinez-Lopez's sentence is free of procedural errors, we then determine whether the sentence imposed was substantively reasonable taking into account the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). The district court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2), including the need to promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2). Additionally, in imposing a particular sentence the court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, any relevant policy statements of the Sentencing Commission, the need to avoid unwarranted disparities in sentencing, and the need to provide restitution to

victims. *Id.* § 3553(a)(1), (3)–(7).  The weight given to any particular factor is committed to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).  However, we will remand if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted).

The fact that a particular Guideline is not based on empirical evidence is not an independent ground for invalidating that Guideline. *United States v. Snipes*, 611 F.3d 855, 870 (11th Cir. 2010).  A district court may, however, consider the lack of empirical evidence as a relevant factor in exercising its right to depart from the Guidelines. *Id.*  Although we do not presume that a sentence falling within the guideline range is reasonable, we ordinarily expect such a sentence to be reasonable. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).  Likewise, a sentence imposed well below the statutory maximum penalty also indicates that the sentence is reasonable. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam).

Martinez-Lopez's argument that his sentence is substantively unreasonable because the Guidelines for illegal reentry are not based on empirical evidence lacks merit.  The lack of empirical evidence alone does not require a district court to accord no deference to the guideline range. *Snipes*, 611 F.3d at 870.  Rather, it is

11

simply one factor that the district court may consider alongside the § 3553(a) factors in fashioning a sentence that is appropriate but not greater than necessary. *See id.* Furthermore, the district court found that a within-guideline sentence was warranted given Martinez-Lopez's absolute disregard for the laws of the United States, as evidenced by his consistent pattern of reentering the United States after being deported. As such, a harsher sentence was necessary to deter Martinez-Lopez from continuing that pattern in the future, as well as to promote respect for the law, deter other undocumented immigrant smugglers and protect the public. *See* 18 U.S.C. § 3553(a)(2). Moreover, Martinez-Lopez's sentence was within the guideline range and substantially below the statutory maximum of twenty years' imprisonment for Count 1. This Court can ordinarily expect such a sentence to be reasonable. *See Hunt*, 526 F.3d at 746; *Gonzalez*, 550 F.3d at 1324. Accordingly, the district court did not abuse its discretion in imposing a total seventy-two-month sentence.

## B.

To the extent that Martinez-Lopez also argues that his sentence reflected improper double-counting of his criminal history, this argument lacks merit too. The consideration of a defendant's criminal history in imposing a particular sentence does not result in an additional punishment for the prior offense, but rather a stiffened penalty for the current offense. *Witte v. United States*, 515 U.S.

389, 400, 115 S. Ct. 2199, 2206 (1995).  Additionally, the enhancements provided under U.S.S.G. § 2L1.2 do not constitute improper double counting of an undocumented immigrant defendant's criminal history because they are designed to serve a different purpose than the criminal history category.  *See United States v. Adeleke*, 968 F.2d 1159, 1161 (11th Cir. 1992).  The criminal history category is meant to punish recidivists more severely, whereas the enhancements under § 2L1.2 are intended to deter reentry by undocumented immigrants who have been convicted of felony offenses.  *See id.*  Furthermore, we have held that consideration of a defendant's prior offenses under 18 U.S.C. § 3553(a)(1) is appropriate even though those offenses are also considered in calculating the defendant's guideline range.  *United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008) (per curiam).

This Court has held that enhancements under § 2L1.2 serve a different purpose than the criminal history category, and consideration of the same prior crime for both purposes therefore does not constitute double counting.  *See Adeleke*, 968 F.2d at 1161.  As such, Martinez-Lopez's guideline range accurately reflected the various aims of the Sentencing Commission and did not constitute duplicative counting of his criminal history.  *See id.*

V.

13

Martinez-Lopez also challenges the district court's imposition of a ten-month sentence for violating the terms of his supervised release. He claims that the sentence is unnecessary, and, therefore, substantively unreasonable. In addition, he contends that this sentence failed to consider the fact that he was sentenced near the top end of the advisory guidelines range for the instant conviction, upon which the revocation was based. Finally, he asserts that the district court's justification for the imposition of the ten-month revocation sentence—to make up for its imposition of a lower sentence on the instant conviction—failed because a six-month consecutive sentence would have satisfied that goal.

We review a district court's revocation of supervised release for an abuse of discretion. *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008) (per curiam). Upon finding that the defendant has violated a condition of his supervised release, a district court may revoke the supervised release and impose a term of imprisonment. 18 U.S.C. § 3583(e)(3). In determining whether to revoke supervised release, the district court must consider certain of the 18 U.S.C. § 3553(a) factors. *Id.* The sentence imposed on the revocation is reviewed for reasonableness. *Velasquez Velasquez*, 524 F.3d at 1252. "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors." *Tome*, 611 F.3d at 1378. District courts have discretion in

14

determining whether to impose sentences consecutively or concurrently. *See* 18 U.S.C. § 3584(a). The Guidelines' policy statement regarding revocation of supervised release advises that any term of imprisonment imposed upon revocation of supervised release be served consecutively to any other term of imprisonment the defendant is serving, regardless of whether the sentence being served resulted from the conduct that was the basis for the revocation. U.S.S.G. § 7B1.3(f).

Here, Martinez-Lopez failed to show that his revocation sentence was unreasonable in light of the § 3553(a) factors. The district court considered the facts and sentence for the new conviction, in addition to the facts of the underlying conviction when it fashioned the revocation sentence. Furthermore, the district court deliberately elected not to give a top of the guideline sentence on the new conviction because it intended to impose a consecutive top of the guideline sentence for violating the conditions of his supervised release. The district court explained that the total eighty-two-month sentence in essence reflected the top of the guideline range for the new conviction, plus an additional four months to reflect the supervised release violation. The district court deemed such a sentence appropriate to reflect Martinez-Lopez's flagrant refusal to obey the laws of the United States and demonstrated the district court's adequate consideration of the § 3553(a) factors in fashioning both a total sentence and the revocation sentence. The revocation sentence reflected the nature and circumstances of the offense and

15

Martinez-Lopez's criminal history and characteristics, and it served to promote respect for the law, provide just punishment for Martinez-Lopez's supervised release violation, and deter Martinez-Lopez from future criminal conduct. Furthermore, Martinez-Lopez's ten-month revocation sentence was within the guideline range, which we ordinarily expect to be reasonable. Therefore, the district court did not abuse its discretion when it imposed a consecutive ten-month sentence for Martinez-Lopez's violation of supervised release.

VI.

Finally, Martinez-Lopez argues that the district court erred in imposing a fine because the evidence showed that he had no income at the time of his arrest, has no assets currently, and has low future earning potential due to his limited education, and, therefore, he did not have the ability to pay. Martinez-Lopez further contends that both the probation officer and the district court erred when concluding that he would be able to earn money during his term of incarceration because deportable undocumented immigrants are not eligible to participate in Bureau of Prisons (BOP) work programs.

We review a district court's determination that the defendant is able to pay a fine for clear error. *United States v. Gonzalez*, 541 F.3d 1250, 1255 (11th Cir. 2008) (per curiam). It is the defendant's burden to prove that he is unable to pay a fine. *Id.* The Guidelines require the district court to impose a fine in all cases,

unless the defendant establishes that he is presently unable to pay and is unlikely to become able to pay a fine in future. U.S.S.G. § 5E1.2(a). If the defendant establishes that he is unable to pay a fine within the guideline range or if the imposition of a fine is found to have an undue burden on the defendant's dependents, then the court may impose a lesser fine. *Id.* § 5E1.2(e).

If the district court determines that a fine is appropriate, the court should consider several factors in determining the amount of the fine. *Gonzalez*, 541 F.3d at 1255. These factors are: (1) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence; (2) evidence as to the defendant's ability to pay in light of his earning capacity and financial resources; (3) the burden on the defendant and his dependents; (4) any restitution the defendant has made or is obligated to make; (5) collateral consequences of conviction; (5) whether the defendant previously has been fined for a similar offense; (7) the expected costs to the government of imprisonment, probation, or supervised release; and (8) any other pertinent equitable considerations. U.S.S.G. § 5E1.2(d)(1)–(8).

We do not require the district court to make specific findings with respect to the guidelines factors. *Gonzalez*, 541 F.3d at 1256. Rather, the record must reflect only that the district court considered the factors before imposing the fine. *Id.* Where the PSI contains information with respect to the § 5E1.2(d) factors and the

17

district court reviewed the PSI before imposing the fine, we infer that the district court considered those factors before imposing the fine. *See United States v. McNair*, 605 F.3d 1152, 1234 (11th Cir. 2010).  However, if the record does not reflect a reasoned basis for imposing a fine, we will remand the case so that the district court may make the necessary factual findings. *Gonzalez*, 541 F.3d at 1256.

Here, the information in the PSI discussed Martinez-Lopez's prior convictions, deportations, and illegal reentries into the United States, all of which weigh in favor of the need to promote respect for the law, provide just punishment, and afford adequate deterrence. *See* U.S.S.G. § 5E1.2(d)(1).  The PSI also included information regarding Martinez-Lopez's educational background and employment history, which is relevant to Martinez-Lopez's ability to pay a fine. *See id*. § 5E1.2(d)(2).  Moreover, the PSI described Martinez-Lopez's family situation, stated that he would not have to pay restitution, noted his immigration status, and identified the cost of his incarceration, all of which are relevant facts for the consideration of the remaining § 5E1.2(d) factors. *See id*. § 5E1.2(d)(3)–(7). In addition, the facts in the PSI indicate that Martinez-Lopez has prior work experience in the construction industry (both in the United States and in Mexico) and that he was employed at the time of his arrest.  Martinez-Lopez has failed to show he will be unable to obtain employment after his release or that the fine

imposed by the district court will create an undue burden on his family.   While we recognize that the district court did not explicitly make findings with respect to the § 5E1.2(d) factors at sentencing, the district court reviewed the PSI[1] that contained information regarding those factors before imposing the sentence, and, therefore, we infer that the district court considered the § 5E1.2(d) factors. *McNair*, 605 F.3d at 1234.  Accordingly, we conclude that the district court's imposition of a fine, under these circumstances, was not clear error.

   **AFFIRMED.**

---

[1] A defendant's failure to object to factual allegations in the PSI constitutes an admission of those facts for sentencing purposes. *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).