[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-15365

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 2, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-20381-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO B. GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 2, 2008)**

Before BIRCH, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Pedro Gonzalez ("Gonzalez") was convicted of several counts of mail and wire fraud. On appeal, he challenges both his convictions and his sentence. We conclude that Gonzalez's conviction is supported by the evidence and that the district court did not commit any reversible error at trial. Accordingly, we AFFIRM Gonzalez's conviction. However, because the fine imposed by the district court is not supported by the evidence in the record, we must VACATE the sentence in its entirety and remand this case to the district court for resentencing.

## I. BACKGROUND

Gonzalez, the owner of Nations Capital Credit Corporation ("Nations") and Excel Investment Group, Corporation ("Excel"), was indicted on five counts of mail fraud, in violation of 18 U.S.C. § 1341, and six counts of wire fraud, in violation of 18 U.S.C. § 1343. The indictment described the alleged scheme as follows. Gonzalez advertised his companies as specializing in obtaining equipment financing, and he solicited at least 50 small businesses and individuals throughout the United States to submit credit applications, financial information, and up-front deposits with the hope of obtaining financing. Gonzalez did not provide the customers with financing and did not return their deposits as he had promised.

At trial, Keith Bauer ("Bauer") testified that he worked for Gonzalez as an account executive at Nations. Nations distributed promotional material, and customers would contact the company with the understanding that Nations could finance "hard deals." R4 at 195. Bauer would contact or "cold call" companies and individuals who would then refer other individuals to Nations for financing. R5 at 13. When Bauer began working at Nations, Gonzalez instructed him how to make calls to potential customers. R4 at 189. A typical call would consist of the following: "I am Keith Bauer from NCC. We can fund you guys. If you have bad or low credit sources, with a good interest rate . . . ." Id. at 189-90. If the customer was interested, Nations would start the process, including "pulling the credit and things like that." Id. at 190. Gonzalez often told Bauer to request financial information from potential customers. Before receiving a commitment letter from Nations, the customers sent a credit application to Nations, and based on the results of a credit report, Gonzalez would determine whether to attempt to obtain financing for the customer. Very few applications were denied. If customers had bad credit, Bauer would tell them that they could probably get funding with a high interest rate. If a client was interested in obtaining funding from Nations, he would be required to send in a commitment letter with a deposit for the first and last month's payments. The customer was told that the deposits

3

would be refunded if financing could not be obtained. Jose Espino ("Espino") had bad credit and contacted Nations seeking financing, and Bauer informed him that they could probably obtain financing. Id. at 207-08. At trial, Espino testified that he needed financing to purchase a trailer for his truck delivery business, but was unable to obtain financing. Gonzalez claimed to have a funding source that could get financing for "tough deals" like Espino's. Id. at 208. After filling out an application and sending in a requested credit report, Bauer called and told Espino he was approved. Espino sent Bauer a check for over $1,400, which he was told would be refunded if financing was not obtained. Nations never financed Espino's trailer and never refunded his money.

Several other victims testified to similar dealings with Gonzalez and Nations. Martin Cherenacov ("Cherenacov") testified that he contacted Gonzalez at Nations after he had failed to obtain financing from a "million places" to build a movie theater. R5 at 100. Cherenacov never obtained the promised financing from Gonzalez and he was unsuccessful in obtaining the promised refund. Gina Woodring ("Woodring") testified that, after being referred to Nations in order to finance an expensive piece of equipment for her and her husband's logging company and placing a $7,500 deposit, her company began to have financial difficulties. Woodring never received financing or a refund of her deposit, and she

4

was forced to close down her company. Mitchell Gerstenblith ("Gerstenblith") testified that his start-up printing company, which was in debt, was referred to Excel after failing to obtain financing from traditional leasing companies and banks. He was forced to cancel on a major equipment lease after he failed to receive the promised financing, and he never received a refund. Gordon Peterson ("Peterson") testified that he sent Gonzalez over $3,000 as deposit to obtain financing, and he never received a refund after financing was denied. Nesthalis Perez ("Perez") testified that, after working in a factory, he attempted to obtain financing from Gonzalez in order to buy a truck and start his own business because his "life was very hard." R8 at 42. He sent Gonzalez over $4,600 and received a refund of only $1,000. Woodring, Gerstenblith, and Peterson all testified that they provided Gonzalez with their financial information. Gonzalez did not testify at trial. The court dismissed Count Eight of the indictment, and the jury found Gonzalez guilty on the remaining ten counts.

The pre-sentence investigation report ("PSI") calculated Gonzalez's guideline range as follows. The base offense level for all ten counts grouped together was six pursuant to U.S.S.G. § 2B1.1(a). The probation officer applied a 14-level enhancement pursuant to § 2B1.1(b)(1)(h) because the amount of loss was more than $400,000 but less than $1,000,000. The probation officer applied a

5

four-level enhancement pursuant to § 2B1.1(b)(2)(B) because the offense involved more than 50 victims. The probation officer then applied a two-level enhancement pursuant to § 3A1.1(b)(1) because Gonzalez knew or should have known that a victim of the offense was vulnerable based on poor credit history and an inability to obtain conventional financing. The probation officer also applied a four-level enhancement pursuant to § 3B1.1(a) for Gonzalez being an organizer or leader of a criminal activity involving five or more persons. This resulted in an offense level of 30. Gonzalez earned zero criminal history points, for a criminal history category of I. An offense level of 30 and a criminal history category of I gave Gonzalez a guideline range of 97 to 121 months of imprisonment.

After interviewing Gonzalez, examining his financial records, and investigating other sources, the probation officer analyzed Gonzalez's financial condition and his ability to pay a fine. The probation officer determined that Gonzalez had a net monthly cash deficit and concluded that he did not have the ability to pay a fine in addition to mandatory restitution. The probation officer determined that, pursuant to § 5E1.2(c)(3), Gonzalez's fine range under the Guidelines was $15,000 to $150,000 and determined that he owed restitution in the total amount of $993,277.12 to 207 victims. Gonzalez objected to the PSI's factual account of his offense conduct, the amount of monetary loss attributed to

6

him, the role enhancement, the enhancement for the number of victims, and the vulnerable-victim enhancement.

At sentencing, the court sustained in part Gonzalez's objection to the amount of monetary loss attributed to him, finding that an 8-level enhancement, as opposed to a 14-level enhancement, was appropriate, sustained Gonzalez's objection to the role enhancement, and sustained in part Gonzalez's objection to the number of victims, finding that a two-level enhancement, as opposed to a four-level enhancement, was appropriate. The court then discussed the vulnerable-victim enhancement and analyzed the financial circumstances of the 14 victims who testified at trial. The court found the following six victims to be vulnerable within the meaning of § 3A1.1(b)(1): Espino, Cherenacov, Woodring, Gerstenblith, Peterson, and Perez. After resolving these objections, the court found Gonzalez's base offense level to be 18, resulting in a revised guideline range of 27 to 33 months of imprisonment.

Defense counsel requested that Gonzalez's family members be permitted to testify before the court imposed its sentence. The court declined the request, stating:

> I know their support is very important. . . . I infer that they want me
> to give the lowest sentence possible. He's a good man, a good father,
> a good husband, a good citizen. But I do not [want to] have a parade

of family members saying the obvious and putting them through that trauma.

R10 at 35. The court requested defense counsel to proffer the substance of the proposed testimony of each family member – Gonzalez's wife, father, and sisters – which generally consisted of the fact that Gonzalez had strong family support and was likely to reintegrate himself into society. The court accepted that the proposed testimony was in fact what the family members believed. After Gonzalez requested, without success, that the court impose a sentence below the applicable guideline range, the court assured defense counsel that it would consider Gonzalez's strong family background and his ability to reintegrate back into society. Gonzalez then personally apologized to the court, asking the court to consider his family background and lack of criminal history. After summarizing the resolution of the objections, the court stated:

> I will note that, of course, he apologizes, as he mentioned today. I will not inquire of him as to exactly what he means by that, because he did not take the stand during the trial, and I suspect that there may be an appeal, as he has every right to do.

Id. at 41.

The court then discussed each of the 18 U.S.C. § 3553(a) sentencing factors. The court first considered sentencing for white-collar crime and found that, as is typically the case, the history and characteristics of Gonzalez "kind of even out,"

8

because he came from a good home, but that fact should have allowed him to avoid his criminal conduct. Id. at 42-43. Considering the nature and circumstances of the offense, the court found that this inured to the detriment of Gonzalez because of the desperation of the victims and the persistence of the fraud. Considering the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, the court found that people who commit fraud should be punished severely because of the harm to the victims. With regard to deterrence, the court found that the only way to prevent future white collar crime was to issue severe punishments, as opposed to a house arrest or a fine, which could be considered the cost of doing business. The court found that providing Gonzalez with training or education was not a factor in this case. With respect to the kinds of sentences available, the court found that it had "all kinds of sentences available" after United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). R10 at 44. The court then acknowledged that the applicable guideline range was "very important," and noted that the court's calculation of the guideline range, after resolving objections, was ten years less than the original guideline range presented in the PSI. Id. The court found that the need to avoid unwarranted sentencing disparities was not a factor because Gonzalez was the only defendant and "the guidelines kind of take care of that." Id. at 45. With

9

respect to restitution, the court found that Gonzalez owed approximately $116,000

but had only paid back $7,000, which was "nothing to brag about." Id. at 46. The

court then stated:

> I think in this particular case, here is what I perceive to be, and I
> didn't hear the defendant testify, of course, though he has not
> accepted responsibility and what he said, I apologize. I don't know.
> Does he apologize without accepting responsibility?
>
> But his demeanor during the trial, as I sat here as a Judge, showed in
> my mind, while the witnesses that were testifying, particularly the
> ones I have found vulnerable because I took into consideration that,
> he had what I perceive to be a very callus attitude. It seemed to me
> that this was just a business dealing. It was just mugging, I didn't
> want to hit anybody. . . .
>
> There really was absolutely no showing of remorse. Because of that,
> I think a reasonable sentence would include a sentence above the
> guidelines, and it is my intention to go above the guidelines . . . .
>
> But in this particular case, because [of] what I perceive to be the
> callus attitude of the defendant, his lack of remorse, the suffering of
> the victims, I disagree with defense counsel saying, well, he's going
> to reintegrate into society. I think he would if he were sufficiently
> punished.

Id. at 46-48. Finding a 33-month sentence to be insufficient punishment, the court

imposed a sentence of 66 months of imprisonment and restitution in the amount of

$116,300. The court also stated, "[b]ecause you are able to pay a fine, a fine will

be imposed in the amount of $250,000." Id. at 48. Defense counsel renewed the

previous objection to the vulnerable victim enhancement, and objected to the

10

above-guideline sentence and the fine imposed by the district court. This appeal followed.

## II. DISCUSSION[1]

Gonzalez argues that the court erred in imposing a $250,000 fine because he lacks the ability to pay a fine. Gonzalez maintains that he met his burden regarding his inability to pay, and that the court did not consider his inability to pay the fine in light of his mandatory restitution, as it was required to do. The government responds that, during trial, the district court learned of Gonzalez's bank records and his lavish lifestyle, and therefore, the fine was supported by that information, but the government conceded that the fine was otherwise unsupported by the record.

"We review the district court's decision that [the] [d]efendant is able to pay the fine for clear error." United States v. McGuinness, 451 F.3d 1302, 1307 (11th

---

[1] Gonzalez raised several arguments regarding the district court's decisions to exclude demonstrative exhibits prepared by the defense for use at trial, to admit the testimony of Barry Longwater, and to allow the government to introduce evidence under Federal Rule of Evidence 404(b). Gonzalez also contends that the evidence adduced at trial was insufficient to support his conviction and the government's closing argument contained prejudicial remarks. Upon our review of the record, we discern no reversible error relating to the district court's rulings on the admissibility of evidence, and we conclude that sufficient evidence supports Gonzalez's conviction. In addition, Gonzalez challenged the district court's imposition of a "vulnerable victim" enhancement to his sentence, and the constitutionality and reasonableness of Gonzalez's prison sentence. Because we vacate Gonzalez's sentence in its entirety based upon the fine imposed by the district court, we do not discuss or resolve Gonzalez's other objections to his sentence.

11

Cir. 2006) (per curiam). The "[d]efendant has the burden of proving inability to pay." Id. The Guidelines require the court to "impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). "If the sentencing court concludes that a fine is appropriate, the Guidelines Manual lists several factors it should consider in determining the amount of the fine." United States v. Hernandez, 160 F.3d 661, 665 (11th Cir. 1998). These factors are:

> (1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;
>
> (2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;
>
> (3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;
>
> (4) any restitution or reparation that the defendant has made or is obligated to make;
>
> (5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;
>
> (6) whether the defendant previously has been fined for a similar offense;
>
> (7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and

12

(8) any other pertinent equitable considerations.

> The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive.

U.S.S.G. § 5E1.2(d).  "[W]e do not require the sentencing court to make specific findings of fact with respect to the Sentencing Guideline factors as long as the record reflects the district court's consideration of the pertinent factors prior to imposing the fine."  Hernandez, 160 F.3d at 665-66 (quotations and alteration omitted).  If the record does not reflect the district court's reasoned basis "for imposing a fine, we must remand the case so that the necessary factual findings can be made."  Id. at 666.

In Hernandez, the defendant argued that the sentencing court erred by imposing a fine upon him after the PSI concluded that he did not have the ability to pay.  Id. at 665.  However, because the defendant did not object to the fine at sentencing, we reviewed his claim for plain error and stated that "the district court had no notice of the need to make further findings with respect to the fine."  Id. at 666.  Nonetheless, we concluded that the record supported the fine because he owned a home and a yacht before seeking bankruptcy relief, and he failed to answer the probation office's financial questions, thus implying that he was concealing assets.  Id.

By contrast, in this case, the PSI provided a detailed financial analysis of Gonzalez's assets and concluded that he lacks the ability to pay a fine in addition to mandatory restitution. At sentencing, however, the court stated, without explanation, that Gonzalez was able to pay a fine and imposed a $250,000 fine. R10 at 48. At the time that the court imposed the fine, it had reduced Gonzalez's base offense level to 18 after sustaining Gonzalez's objections to some of the enhancements in the PSI. Under the Guidelines, a base offense level of 18 would give Gonzalez a new Guidelines fine range of $6,000 to $60,000. U.S.S.G. § 5E1.2(c)(3). Thus, the court imposed a fine of more than three times the maximum fine provided for in the Guidelines without providing any reasoned basis and without explaining why the PSI's conclusion with respect to Gonzalez's inability to pay was incorrect. Unlike Hernandez where the defendant failed to object to the fine, Gonzalez objected at sentencing and the court therefore had notice of the need to provide some reasoned basis for imposing the fine. See 160 F.3d at 665-666. Because the record provides no explanation regarding the basis upon which the court imposed the fine, we vacate the sentence imposed by the district court and remand this case for resentencing. United States v. Yost, 185 F.3d 1178, 1181 (11th Cir.1999) (". . . we have held that when we vacate a sentence and remand for resentencing, the sentence becomes void in its entirety

14

and the district court is free to revisit any rulings it made at the initial sentencing."); <u>United States v. Stinson</u>, 97 F.3d 466, 469 (11th Cir.1996) (per curiam) ("A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent consistent with the Sentencing Guidelines.").

## III.  CONCLUSION

On appeal, Gonzalez challenges both his conviction and his sentence.  We conclude that Gonzalez's conviction is supported by the evidence and that the district court did not commit any reversible error at trial.  Accordingly, **WE AFFIRM GONZALEZ'S CONVICTION**.  However, because the fine imposed by the district court is not supported by the record, we must vacate the sentence in its entirety and remand this case to the district court for resentencing.

**VACATED IN PART AND REMANDED**