[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10179
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 12, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-20509-JEM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM GORDON ISAAC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 12, 2011)

Before EDMONDSON, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

William G. Isaac, Jr. appeals his convictions for attempting to import into the United States 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 952(a) and 963, and attempted possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Isaac argues that: (1) law enforcement officials at the Miami airport, who detained him after Peruvian officials notified them that they had discovered cocaine in his checked luggage upon his departure from Lima, should have stopped questioning him once he invoked his right to counsel by refusing to sign a Miranda v. Arizona, 384 U.S. 436 (1966), rights waiver form; and (2) the district court failed to make any findings that he was able to pay a fine, and improperly imposed a total fine of $25,000. After thorough review, we affirm.

We review a district court's denial of a motion to suppress as a mixed question of law and fact. United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009). Rulings of law are reviewed de novo, while the district court's findings of fact are reviewed for clear error. Id. Factual findings are reviewed in the light most favorable to the prevailing party in the district court. Id. We review a district court's decision to impose a fine for clear error. United States v. Rowland, 906 F.2d 621, 623 (11th Cir. 1990).

2

First, we are unpersuaded by Isaac's <u>Miranda</u> claim. In <u>Miranda</u>, the Supreme Court considered the scope of the Fifth Amendment privilege against self-incrimination and held that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. An individual is considered to be "in custody" for purposes of receiving <u>Miranda</u> protection where "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (quotation omitted). "It is well established that '[t]he government must prove by a preponderance of the evidence that [the defendant] made a knowing, voluntary and intelligent waiver of his <u>Miranda</u> rights." <u>United States v. Chirinos</u>, 112 F.3d 1089, 1102 (11th Cir. 1997) (citation omitted) (brackets in original). A waiver is effective where the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." <u>United States v. Barbour</u>, 70 F.3d 580, 585 (11th Cir. 1995) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).

When a person undergoing a custodial interrogation states that he wishes to remain silent, "the questioning must end, and if he expresses a desire to consult with

an attorney, the questioning must cease until one is provided for him." United States

v. Acosta, 363 F.3d 1141, 1151 (11th Cir. 2004). However, the Supreme Court has

held that law enforcement officers have no duty to stop an interrogation where the

suspect's invocation of either of those rights is equivocal. Davis v. United States, 512

U.S. 452, 461-62 (1994). In Davis, the Supreme Court held:

> Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. Rather, the suspect must unambiguously request counsel.

512 U.S. at 459 (internal citations omitted). When an accused invokes his right to

have counsel present during a custodial interrogation, he may not be subjected to

further interrogation until counsel has been made available or the accused himself

initiates further communication, exchanges, or conversations with police. Edwards

v. Arizona, 451 U.S. 477, 484-85 (1981).

A refusal to sign a waiver of rights form is not enough to constitute an

invocation of the right to counsel. Acosta, 363 F.3d at 1154 (citation omitted). In

Acosta, the defendant was arrested and subject to questioning by law enforcement

officials on suspicion of possession of drugs. Id. at 1142-43. During the interview,

4

officers instructed Acosta to read a <u>Miranda</u> rights form aloud and to initial each paragraph as the officer went through the form. <u>Id.</u> at 1143. Acosta acknowledged that he understood his <u>Miranda</u> rights both by initialing each paragraph of the form and also by reading the entire form aloud. <u>Id.</u> When asked if he wanted to waive his rights, Acosta declined, but he later stated that he was willing to collaborate with the police. <u>Id.</u> at 1144. However, he refused to sign the rights form "because I am not going to waive my rights." <u>Id.</u> We concluded that Acosta had not unambiguously and unequivocally invoked his right to remain silent or his right to counsel while being questioned. <u>Id.</u> at 1155. We employed an objective inquiry to determine whether a reasonable officer under similar circumstances would have understood the defendant's statement as invoking his right to remain silent or his right to an attorney. <u>Id.</u> at 1154. We noted that the defendant in <u>Acosta</u> might have refused to sign the form because he (1) did not fully understand the form and was afraid of permanently relinquishing a right, (2) might have been invoking his right to remain silent, or (3) he did not want to sign a written waiver of his rights because he thought that a signed waiver might be irrevocable. <u>Id.</u> As a result, the presence of multiple plausible, differing interpretations rendered the act ambiguous. <u>Id.</u> at 1155.

In this case, viewing the facts in the light most favorable to the government, the district court did not err in denying Isaac's motion to suppress his admission to law

5

enforcement officials because first, he was verbally advised of and voluntarily waived his <u>Miranda</u> rights, and second, Isaac did not unequivocally invoke his right to counsel. At the suppression hearing, DEA Special Agent Temprano testified that he verbally advised Isaac of his <u>Miranda</u> rights at the start of the interview, and Isaac acknowledged that he understood his rights and did not ask for a lawyer at that point. Moreover, Isaac himself admitted that Temprano read him <u>Miranda</u> rights and he both understood and was familiar with those rights. Following the administration of the verbal warnings, Isaac voluntarily agreed to answer the agents' questions and made several incriminating statements, including that the reason for the questioning was due to his previous criminal charges, that he was involved in the importation of cocaine because he was suffering financial distress, and the contents of his suitcase in Peru included cocaine. The record thus shows that after being advised of his rights, Isaac did not indicate unambiguously that he wished to invoke them. <u>Edwards</u>, 451 U.S. at 484-85. The record further shows that Isaac was not coerced or promised anything in exchange for his statements. Based on the totality of the circumstances, including the uncoerced nature of the interview and Isaac's comprehension of his rights, Isaac effectively waived his <u>Miranda</u> rights. <u>Barbour</u>, 70 F.3d at 585.

Nor did Isaac ever clearly invoke his right to counsel during the interview, and, therefore, law enforcement officers were under no duty to cease questioning. <u>Davis</u>,

6

512 U.S. at 461-62. As noted, Isaac acknowledged that he understood Special Agent Temprano's verbal recitation of his <u>Miranda</u> rights and voluntarily agreed to proceed with the questioning. When Temprano eventually procured a copy of a rights waiver form, Isaac initialed the paragraphs on the upper-half of the rights waiver form, and only when he was asked to sign the bottom of the rights waiver form did Isaac say that he had spent many years doing legal research in prison and he would not sign any forms without speaking to his attorney in California. The district court adopted the magistrate's finding that Isaac's statement concerning an attorney was limited to the act of not signing the waiver form, as opposed to invoking his Fifth Amendment right to counsel during the interview. Similar to the defendant in <u>Acosta</u>, Isaac agreed to answer the agents' questions, but he might not have wanted to sign the rights form because he was afraid that a signed waiver might be irrevocable. 363 F.3d at 1154. As a result, his statement about the California attorney could be subject to multiple reasonable interpretations, thereby rendering its meaning ambiguous. <u>Id.</u> at 1154-55.

Following Isaac's refusal to sign the rights waiver form, Temprano wrapped up the interview by informing Isaac that the government would be interested in his cooperation to further their investigation, including the source of the drugs, to which Isaac responded that he did not have a buyer in the United States yet. Although this was an incriminating statement, Isaac uttered the statement after being advised of, and

7

voluntarily waiving his <u>Miranda</u> rights. Moreover, although he mentioned his attorney in California, this was, as noted, in reference to the act of signing the rights waiver form, and Isaac never clearly invoked his right to counsel with regard to the agents' line of questioning. Under these circumstances, a reasonable officer could have understood only that Isaac <u>might</u> be invoking the right to counsel, and, thus, law enforcement officers were not required to end the questioning. <u>Davis</u>, 512 U.S. at 459. Accordingly, the district court did not err in denying Isaac's motion to suppress.

We are also unpersuaded that the district court clearly erred in imposing a fine. The Sentencing Guidelines require the district court to impose a fine unless the defendant establishes that he is unable to pay, and is unlikely to become able to pay, any fine. U.S.S.G. § 5E1.2(a). Thus, the burden is on the defendant to prove his inability to pay a fine. <u>United States v. Hernandez</u>, 160 F.3d 661, 665 (11th Cir. 1998). If a defendant establishes that he is unable to pay a fine or that the fine would burden his dependents, the court may waive the fine or impose a lesser fine. U.S.S.G. § 5E1.2(e).

Once a district court decides that a fine is appropriate, it must consider the factors in § 5E1.2(d) to determine the amount of the fine. <u>Hernandez</u>, 160 F.3d at 665. These factors are: (1) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate

deterrence; (2) the defendant's ability to pay the fine in light of his earning capacity and financial resources; (3) the burden that the fine places on the defendant and his dependents; (4) any restitution that the defendant has made or will be required to make; (5) the collateral consequences of the conviction; (6) whether the defendant has previously been fined for a similar offense; (7) the expected costs to the government of any term of probation, imprisonment, or supervised release; and (8) any other pertinent equitable considerations. U.S.S.G. § 5E1.2(d). In considering the second factor, the financial inability of a defendant to post a bail bond and the fact that a defendant is represented by appointed counsel are "significant indicators" of a defendant's present inability to pay, and, in conjunction with other factors, may indicate that the defendant is unlikely to become able to pay a fine. U.S.S.G. § 5E1.2, comment. (n.3).

A district court is not required to make specific findings for each of the § 5E1.2(d) factors. United States v. Gonzalez, 541 F.3d 1250, 1256 (11th Cir. 2008). However, the record must contain sufficient information with respect to the factors to permit us to conclude that the district court did not clearly err in imposing or setting the amount of the fine. Id. If the presentence investigation report ("PSI") presented information with respect to the factors, and the district court reviewed the PSI prior to imposing the fine, we "infer without hesitation" that the district court

9

considered the pertinent factors before imposing the fine. United States v. Khawaja, 118 F.3d 1454, 1459 (11th Cir. 1997). However, if the record does not reflect the district court's reasoned basis for imposing a fine, we must remand the case for the necessary factual findings to be made. Gonzalez, 541 F.3d at 1256.

Here, Isaac failed to establish that he lacked either the present or future ability to pay a fine. Hernandez, 160 F.3d at 665. In the first place, Isaac failed to demonstrate that he lacks the present ability to pay a fine because (1) a trust in his name contained two unencumbered properties worth approximately $500,000 each; (2) a public records search revealed a 2010 BMW M3 registered to Isaac; (3) while on supervised release, Isaac reported rental income of approximately $3,000 a month from a property located in Sherman Oaks, California; and (4) although Isaac had court appointed counsel during his appeal, he had retained private counsel during his trial and sentencing hearing. Isaac attempted to refute the PSI's findings concerning his ownership of the two properties, but he offered no actual evidence beyond his own statement that the trust could be in his father's name, and that he did not have access to the trust's assets.

Moreover, Isaac was unable to establish that he would be unable to pay a fine in the future. First, despite his claim that he lacked the ability to earn income, the PSI revealed that he had a college degree in business administration, graduating cum

laude.  From 2008 to June 2010, Isaac worked as a property manager, earning approximately $3,000 per month.  In addition, although Isaac was incarcerated from 1999 through 2007, prior to that time period, he was a self-employed independent contractor.  Therefore, Isaac had at least some skills with which he could earn a living.  Further, both the PSI and the district court concluded that Isaac could contribute to a fine while incarcerated, and the court specifically noted that it could take account of the information contained in the PSI because the probation officer had relied on public records.  Khawaja, 118 F.3d at 1459.  Lastly, the district court imposed a fine at the bottom end of the guideline range on both counts.  Thus, because Isaac failed to meet his burden of showing that he could not pay any fine either now or in the future, we affirm the district court's decision to impose a fine.

**AFFIRMED.**