[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16918
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-20366-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANGELO ANTON SHAW,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 2, 2017)

Before HULL, WILSON, and MARTIN, Circuit Judges.

PER CURIAM:

Angelo Aton Shaw was convicted, after a jury trial, of possessing a controlled substance with intent to distribute and possessing a firearm in furtherance of a drug trafficking crime. He pled guilty to possessing a firearm while subject to a protective order. This is his appeal of the 97-month sentence and the $2,500 fine both imposed as a result of these convictions. Shaw argues that the district court erred (1) in granting the government's for-cause challenges to five prospective jurors; (2) in denying the application of a sentence reduction for acceptance of responsibility; and (3) in imposing the $2,500 fine. After careful review, we affirm Shaw's conviction and sentence except as to the fine and we vacate his sentence as to the fine and remand for resentencing.

## I.

In the early morning of March 26, 2016, a police officer attempted to stop Shaw, who was riding a bicycle without a light. Shaw fled and was later caught with a firearm, thirty bags of crack cocaine, and twenty-one bags of heroin in his possession. At the time of his arrest, Shaw was subject to a domestic violence injunction, which prohibited him from possessing a firearm.

On May 19, 2016, Shaw was indicted, charged with three counts: possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count One); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and

2

possession of a firearm and ammunition while subject to a protective order, in violation of 18 U.S.C. § 922(g)(8) (Count Three).  On July 14, 2016, Shaw pled guilty to Count Three.

## A. JUROR SELECTION

The following day, jury selection began for Shaw's trial on Counts One and Two.  At the end of voir dire, the government moved to strike jurors for cause, five of whom are the subject of this appeal.

**Juror 3**—In Juror 3's questionnaire, she wrote "I don't alway[s] side with the brutality of the police department against civilians."  In response to the district judge's questioning, Juror 3 said: "I just don't always side with the police department . . . how they going about their cruelty towards citizens."  The exchange continued:

| | |
|---|---|
| Judge: | And do you come to court with a preconception, are you going to hold the [g]overnment to an even higher standard or no? |
| Juror 3: | No.  I hold it— |
| Judge: | You'll hold them what?  To what, I'm sorry? |
| Juror 3: | I'll hold the [g]overnment to the high standard. |
| Judge: | To the high standard I announced, not some other higher standard you have? |
| Juror 3: | No. |

**Juror 6**—In Juror 6's questionnaire, he wrote that he'd been arrested 15 years ago and that his arrest might affect his ability to be fair and impartial.  The district judge questioned him further:

3

| | |
|---|---|
| Judge: | And you wrote about something that occurred about 15 years ago. Is there anything about that experience that would affect your ability to judge this case? |
| Juror 6: | Yes, it—it will be. I am going to try to be fair, but maybe—maybe not. |
| Judge: | You don't think you can be fair? |
| Juror 6: | I don't think so. |
| Judge: | You served last year as a juror in another case. |
| Juror 6: | Yes, it was different. Every time I come here, I am reminded about my bad experience. |
| Judge: | Your bad experience? |
| Juror 6: | Yes. |
| Judge: | Your bad experience didn't affect you last year, but you think it's going to affect you— |
| Juror 6: | No, no, no. I'm trying to say I am trying to go over this problem, but every time I come here—I am going to be fair, I am going to try to be fair. |

Upon further questioning by the attorney for the government, Juror 6 elaborated that he "was arrested about 15 years ago, and I think I didn't fail nothing, nothing, but the officer said I did." When then asked if he could be an impartial juror, he first responded "I am going to try to," and then on further prompting, said his past experiences would not impact his decisions.

**Juror 10**—Juror 10 raised her hand when the district judge asked the panel if anyone thought they could not "sit in judgment of others or would be uncomfortable in doing so for religious or moral reasons." On further questioning, she said:

| | |
|---|---|
| Juror 10: | I'm a Christian. |
| Judge: | Um-hmm. |
| Juror 10: | And my pastor and the Bible says we shouldn't judge anyone. And I feel very uncomfortable to judge. |

4

Judge:      Okay.  So you cannot sit in judgment?

Juror 10:   No.

**Juror 14**—On his questionnaire, Juror 14 reported that he was a criminal justice major who "believe[d] the current criminal justice system has way too many flaws and errors," and that his brother had faced drug charges earlier that year.  After being told about Shaw's charges, Juror 14 raised his hand to indicate that the nature of the case could affect his ability to be impartial.  He mentioned his brother's recent similar drug charge and said he was "trying to stay away from that, just stay on the right path, I don't want to get involved."  When the attorney for the government later asked Juror 14 if he could be impartial, he responded: "Based on what I've seen in class . . . everything's about the law, not really about what's true or what actually happened, whoever is the best at proving the law, I don't think I can be fair based on what I know."

**Juror 21**—In her questionnaire, Juror 21 wrote that her ability to be fair and impartial might be affected because: "I avoid judging others—I think life circumstances are part of our evolutionary process."  When the district judge asked whether anyone would be uncomfortable sitting in judgment of others for religious or moral reasons, she responded: "I have a hard time with judgment or judging others because I have been working on myself personally a lot not to be judgmental or judging other people."  Although she had previously served on a

jury, Juror 21 clarified that that was before she had concerns about sitting in judgment.

After questioning by both the district judge and the attorney for the government, Shaw's attorney attempted to rehabilitate these jurors. Shaw's attorney asked Jurors 3, 10, and 14 if they could follow the court's instructions and return a verdict of guilty if the government met its burden. All three responded "Yes." When Shaw's attorney similarly tried to rehabilitate Juror 21, she responded that it would be very difficult for her to judge, but she believed she could. When the government moved to exclude Juror 3 for cause, Shaw's attorney argued that she had been rehabilitated. The district court judge responded:

> I don't believe she was rehabilitated. I don't think there's quite such a thing . . . . Had she said that I would have trouble sitting in judgment if I don't hear from Mr. Shaw, and [the attorney for the government] rehabilitated her by saying yes, but if I don't hear from him, I promise to be fair, I dare say you would be seeking a cause challenge because the first response was the more truthful of the two.

In general, the district judge found that statements made by the challenged jurors to Shaw's attorney were outweighed by their earlier statements to the court. For example, when Shaw's attorney objected to the removal of Juror 10 for cause, the district judge responded: "I take her answers to me as truthful. I take her later answers to you in response to prodding, leading questions as being less than truthful." In the end, fifteen jurors were removed for cause, including Jurors 3, 6, 10, 14, and 21.

6

## B. SENTENCING

The jury found Shaw guilty of Counts One and Two.  In preparation for sentencing, a probation officer prepared a presentence investigation report ("PSR").  To calculate Shaw's sentence, the PSR grouped Counts One and Three based on United States Sentencing Guidelines § 3D1.2(c), and then used the most serious count, Count Three, to set the offense level.  Count Two was kept separate because it required a consecutive sentence.  The PSR determined that no enhancements or reductions were merited, and set the guideline imprisonment range at 37 to 46 months for Counts One and Three, to be followed by a consecutive term of not less than five years for Count Two.  The PSR also calculated the fine range to be between $15,000 and $1,000,000, but noted that Shaw had been unemployed since 2012 and appeared to have no assets.  Based on a number of outstanding bills and child support arrearages, the PSR determined that Shaw had a negative net worth of $29,928, and that he did not appear able to pay a fine.

At sentencing, Shaw argued that he should be eligible for an acceptance of responsibility sentence reduction based on his guilty plea to Count Three.  The court found that Shaw was "not deserving of points off for accepting responsibility for his actions in full," and sentenced Shaw to 97-months imprisonment and a

$2,500 fine.  Shaw objected to both the court's decision not to apply the acceptance of responsibility reduction and to the assessment of the $2,500 fine.

## II.

First, Shaw appeals the district court's decision to grant the government's for-cause challenges to five prospective jurors.  "We review a district court's decision to strike a prospective juror for cause for abuse of discretion."  United States v. Abraham, 386 F.3d 1033, 1035 (11th Cir. 2004).

The Constitution provides the right to an impartial jury.  U.S. Const. Amend. VI.  A juror is impartial when he "can lay aside his opinion and render a verdict based on the evidence presented."  Patton v. Yount, 467 U.S. 1025, 1037 n.12, 104 S. Ct. 2885, 2891 n.12 (1984).  If a court determines that a juror cannot be impartial, that juror may be removed for cause.  In reviewing for-cause challenges, we recognize that the trial record may not adequately capture the examining judge's impressions of jurors.  As such, we give deference to the district court, which has the advantage of having seen and heard the jurors.  See United States v. Brown, 441 F.3d 1330, 1357 (11th Cir. 2006).  "[T]here are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion than in ruling on challenges for cause in empanelling of a jury."  United States v. Tegzes, 715 F.2d 505, 509 (11th Cir. 1983).

8

Shaw argues that five defense-friendly jurors were improperly removed for cause, and that as a result, the government effectively received more peremptory challenges than it was allotted by law. He points specifically to Jurors 10 and 21, who expressed concern that their beliefs would not allow them to sit in judgment, and Jurors 3, 6, and 14, who expressed concerns about their impartiality based on experiences with the criminal justice system.

On this record, we cannot say that the district court abused its discretion in removing the five challenged jurors for cause. In her questionnaire, Juror 3 expressed concerns about police brutality impacting her impartiality and upon questioning, seemed to say she would hold the government to a higher standard than the one the court provided. While Juror 6 eventually said he would try to be fair, he initially said he didn't think he could be, based on his prior arrest. Juror 14 said his impartiality would be impacted by his knowledge as a criminal justice major, but more importantly, by his brother's recent arrest for similar charges. In each of these cases, the district court did not abuse its discretion in finding that these jurors would not lay aside their opinions and decide the case impartially. There was no abuse of discretion as to Jurors 10 and 21 either. While Shaw argues that their stated religious or moral beliefs did not rise to the level of bias, both jurors expressed concern about their ability to sit fairly in judgment. The district court did not abuse its discretion in removing them for cause.

The cases Shaw cites for support do not require a different result.  Shaw provides us with no examples in which this or any other court reversed a trial court for inappropriately choosing to excuse a juror for cause.  Indeed, the only cases Shaw offers in which a trial court was found at fault involve a judge's refusal to excuse a juror for cause despite obvious signs of bias.  In one case, for example, a juror personally knew the plaintiff and potential witnesses.  In all the other cases involving "garden-variety expressions of bias or doubt," we deferred to the trial court.  These cases counsel in favor of deference to the trial judge here.

The record does not bear out Shaw's characterization of the district judge's comments as foreclosing rehabilitation entirely.  Instead, the district judge merely found specific attempts at rehabilitation to be insufficient.   For the most part, Shaw's rehabilitation consisted of his asking jurors if they could be fair, and the jurors responding with a one-word affirmance.  We conclude the district judge did not abuse its discretion by weighing the jurors' earlier, ambiguous answers to the court's questions more heavily than later cursory responses to Shaw's attorney.

Because the district court did not abuse its discretion in removing the five challenged jurors for cause, we in turn reject Shaw's argument that the government effectively received five additional peremptory challenges.  We affirm the district court's decision to excuse the challenged jurors for cause and affirm Shaw's convictions as well.

10

III.

Second, Shaw appeals the district court's refusal to reduce his sentence for acceptance of responsibility. We review a district court's decision declining to apply the acceptance of responsibility reduction for clear error. United States v. Moriarty, 429 F.3d 1012, 1022 (11th Cir. 2005).

Guidelines § 3E1.1 allows for an offense level decrease "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). "A district court's determination that a defendant is not entitled to acceptance of responsibility will not be set aside unless the facts in the record clearly establish that a defendant has accepted personal responsibility." United States v. Amedeo, 370 F.3d 1305, 1320–21 (11th Cir. 2004) (quotation omitted).

The district court's refusal to apply the acceptance of responsibility reduction was not clear error. First, while entering a guilty plea before trial and truthfully admitting the relevant convict "will constitute significant evidence of acceptance of responsibility," USSG § 3E1.1 cmt. n.3, "[a] guilty plea does not automatically entitle a defendant to a reduction for acceptance of responsibility," United States v. Rowland, 906 F.2d 621, 622 (11th Cir. 1990). Second, this circuit has determined that "[a] defendant who fails to accept responsibility for all the crimes he has committed and with which he has been charged is entitled to nothing under § 3E1.1." United States v. Thomas, 242 F.3d 1028, 1034 (11th Cir. 2001).

Based on the Sentencing Guidelines commentary and our circuit precedent, we find it was not clear error for the district court to refuse to apply the acceptance of responsibility reduction when Shaw pled guilty to one of his three charged counts.

IV.

Third, Shaw appeals the district court's imposition of a $2,500 fine. We review a district court's finding that a defendant is able to pay a fine for clear error. United States v. McGuinness, 451 F.3d 1302, 1307 (11th Cir. 2006) (per curiam).

The Sentencing Guidelines require the court to "impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay." USSG § 5E1.2(a). The Guidelines also provide a list of factors that the court is required to consider when setting the amount of the fine, including "the defendant's ability to pay" and "the burden that the fine places on the defendant and his dependents relative to alternative punishments." Id. § 5E1.2(d). The district court is not required "to make specific findings of fact with respect to the Sentencing Guideline factors as long as the record reflects the district court's consideration of the pertinent factors prior to imposing the fine." United States v. Hernandez, 160 F.3d 661, 665–66 (11th Cir. 1998) (quotation omitted and alteration adopted). And when the district court has "reviewed the [PSR] before imposing the fine and heard argument of counsel about the fine" we may infer that the pertinent factors were considered. United States v. McNair, 605

12

F.3d 1152, 1234 (11th Cir. 2010).  However, "when the record provides no guidance as to the court's reason(s) for imposing a fine, we must remand the case so that the necessary factual findings can be made."  Hernandez, 160 F.2d at 666.

This record includes no evidence offered to contradict the PSR's determination that Shaw was unable to pay a fine.  The district court's decision to fine Shaw $2,500 without explanation was therefore clear error.   The PSR described Shaw as being unemployed since 2012 and having a negative net worth of $29,928, largely as a result of outstanding child support arrearages.  The PSR concluded: "Based on the defendant's present financial situation and need to support his minor children, it appears he does not have the ability to pay a fine." Nevertheless, the district court required Shaw to pay a fine of $2,500, with no discussion whatsoever.  Shaw objected to the fine as "based on a lack of record evidence," but while the court acknowledged that objection, no other support was provided.  In United States v. Gonzalez, 541 F.3d 1250 (11th Cir. 2008), we vacated and remanded for resentencing where the court imposed a $250,000 fine without explanation, and the PSR reflected that the defendant lacked the ability to pay a fine.  Id. at 1256–57.  While Shaw's fine in this case is certainly smaller than that in Gonzalez, it is equally unsupported by any basis for rejecting the recommendation in the PSR.  We therefore vacate Shaw's sentence as to the fine and remand for resentencing in that regard.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**