[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10428
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-20672-JAL-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILKIN DIAZ-ABREU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 26, 2017)

Before HULL, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

After pleading guilty, Wilkin Diaz-Abreu appeals his sixteen-month sentence imposed for reentry of a deported alien, in violation of 8 U.S.C. § 1326(a). On appeal, defendant Diaz-Abreu argues that his sentence is substantively unreasonable due to a sentencing disparity between his sentence and those of his five codefendants, who received sentences ranging from two months to ten months' imprisonment.  After review, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct and Indictment

On August 21, 2016, Hayasirys Gonzalez-Jaime captained a boat headed toward Florida when the boat was intercepted by United States Customs and Border Protection Air and Marine officers.  The boat contained eight illegal aliens with no immigration status in the United States.  Defendant Diaz-Abreu was among those eight aliens.  Authorities detained all nine people onboard the boat, and three of them were placed in immigration proceedings and removed from the United States.

The other six people onboard were charged in a single indictment with immigration-related crimes.  Gonzalez-Jaime was charged with eight counts of knowingly encouraging and inducing aliens to enter the United States unlawfully, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (v)(II), and 18 U.S.C. § 2.  Count Ten of the indictment charged defendant Diaz-Abreu with attempting to enter the

2

United States unlawfully after being previously removed and deported, in violation of 8 U.S.C. § 1326(a). The indictment charged three of the other men found onboard the boat with § 1326(a) violations as well. Finally, the indictment charged a sixth man with possessing, using, and attempting to use a forged passport to gain entry into the United States, in violation of 18 U.S.C. § 1546(a).

On November 4, 2016, defendant Diaz-Abreu pled guilty.

## B.    Diaz-Abreu's PSI and Sentence

The presentence investigation report ("PSI") assigned defendant Diaz-Abreu a total offense level of ten and a criminal history category of III, resulting in an advisory guidelines sentence of ten to sixteen months' imprisonment. The PSI noted that the statutory maximum sentence was two years' imprisonment.

According to the PSI, defendant Diaz-Abreu is a native of the Dominican Republic and was previously removed from the United States in March 2007 as an illegal alien. In June 2010, Diaz-Abreu was arrested by border patrol agents while attempting to illegally cross from Mexico to the United States. He was charged with illegal reentry and deported. On November 5, 2011, immigration agents again apprehended Diaz-Abreu, who admitted to illegally entering the United States by crossing the Rio Grande on a raft near Hidalgo, Texas. In May 2012, Diaz-Abreu was convicted of being found in the United States after previous deportation and was again deported.

3

Neither the government nor Diaz-Abreu filed any objections to the PSI.

On January 18, 2017, the district court sentenced Diaz-Abreu. The district court adopted the factual findings and guidelines applications from the PSI. The parties agreed that a ten-month sentence, at the low end of the guidelines range, would be appropriate. The district court then stated that it had considered the statements of the parties, the facts and guidelines calculations contained in the PSI, and the statutory factors set forth in 18 U.S.C. § 3553(a). The district court noted Diaz-Abreu's prior 2010 conviction for illegal reentry and his prior 2012 conviction for being found in the United States after previous deportation. Because this was Diaz-Abreu's third immigration-related offense, the district court found that "a sentence at the highest end of the advisory guideline range is the appropriate sentence and is sufficient for both punishment and deterrence." Accordingly, the district court sentenced Diaz-Abreu to sixteen months' imprisonment, at the high end of his advisory guidelines range.

## C.    Codefendants' PSIs and Sentences

Because Diaz-Abreu contends that his sentence is unreasonable because of its disparity with his codefendants' sentences, we briefly review the codefendants' sentences too.

Gonzalez-Jaime pled guilty to Count One of the indictment, and his PSI assigned a total offense level of seventeen and a criminal history category of II,

resulting in an advisory guidelines range of twenty-seven to thirty-three months' imprisonment. The district court sentenced Gonzalez-Jaime to eight months' imprisonment.

The other three men charged with § 1326(a) offenses—Forgan Ariza-Mateo, Luis Ventura-Brea, and Carlos Abreu-Garcia—all pled guilty. Ariza-Mateo had an advisory guidelines range of eight to fourteen months' imprisonment, and the district court sentenced him to eight months. Ventura-Brea had an advisory guidelines range of zero to six months' imprisonment, and the district court sentenced him to time served, five months' imprisonment. Abreu-Garcia had an advisory guidelines range of ten to sixteen months' imprisonment, and the district court sentenced him to ten months.

Finally, the codefendant charged with using a forged passport had an advisory guidelines range of zero to six months' imprisonment, and received a sentence of time served, two months' imprisonment. According to the PSIs, the only other codefendant who had a prior immigration-related conviction was Ariza-Mateo, who was convicted in 2013 for reentry of a removed alien.

## II. DISCUSSION

We review the substantive reasonableness of a sentence under a deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We look first at whether the district court committed any

significant procedural error and then at whether the sentence is substantively unreasonable under the totality of the circumstances. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We ordinarily expect a sentence within the guidelines range to be reasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). The party challenging the sentence bears the burden of proving the sentence is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. Id.[1]

The weight to be given any particular factor is left to the sound discretion of the district court. United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007). We reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Pugh, 515 F.3d at 1191.

Among the § 3553(a) factors is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A sentencing disparity is not

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

"unwarranted" if the individuals being compared are not similarly situated.  United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009); see also United States v. Jayyousi, 657 F.3d 1085, 1117-18 (11th Cir. 2011) (providing that the district court erred when it compared a defendant's sentence to sentences imposed in other cases, where the other defendants had either been convicted of less serious offenses, lacked extensive criminal histories, or had pled guilty).

Defendant Diaz-Abreu has not shown that his sixteen-month sentence, at the high end but within his advisory guidelines range, was substantively unreasonable.[2]  In sentencing Diaz-Abreu, the district court stated that it had considered the statements of the parties, the guidelines range, and the § 3553(a) factors.  Specifically, the district court stated that it had considered Diaz-Abreu's two past convictions and sentences for illegal reentry and being found in the United States after a previous deportation.  Given that this was Diaz-Abreu's third immigration-related offense, the district court determined that "a sentence at the highest end of the advisory guideline range is the appropriate sentence and is sufficient for both punishment and deterrence."

---

[2]Diaz-Abreu does not argue on appeal that his sentence was procedurally unreasonable. He does raise an argument, without citing to any authority, that the district court violated the "parsimony principle" by imposing a sentence that was greater than necessary to comply with the statutory purposes of sentencing.  In reviewing the sentencing transcript as a whole, we find no evidence that the district court did not comply with its statutory obligation to consider the § 3553(a) factors and then impose a sentence that was "not too short and not too long," see United States v. Irey, 612 F.3d 1160, 1197 (11th Cir. 2010) (en banc), and was within the "range of reasonable sentences."  See Talley, 431 F.3d at 788.

Diaz-Abreu's sentence-disparity argument fails because Diaz-Abreu has not shown that he was similarly situated to his five codefendants. Two of the five codefendants were convicted of entirely different crimes. While three of the codefendants were also convicted of illegal reentry like Diaz-Abreu, they did not have similarly extensive criminal histories. None of the other five codefendants had two prior immigration-related offenses. And Diaz-Abreu had more criminal history points and a higher criminal history score than four of his five codefendants.

As to Abreu-Garcia, who had the same criminal history category and the same advisory guidelines range but received a ten-month sentence, Abreu-Garcia was only removed from the United States once before and had re-entered the United States illegally only once. Thus, these codefendants are not similarly situated. See Jayyousi, 657 F.3d at 1117-18 (explaining that codefendants must have similar backgrounds and similar histories in order to be similarly situated). And while Diaz-Abreu received a sentence double that of the boat's captain, Gonzalez-Jaime, these codefendants also were not similarly situated because Gonzalez-Jaime was convicted of a different crime and had a lower criminal history category. In any event, we will not second guess the weight the district court clearly placed on Diaz-Abreu's repeated history of committing immigration offenses. See Amedeo, 487 F.3d at 832; see also United States v. Snipes, 611 F.3d

8

855, 872 (11th Cir. 2010). Thus, in light of the record, the district court did not abuse its discretion in imposing a higher sentence on Diaz-Abreu based on the greater need to punish and deter his repeated immigration offenses.

Under the totality of the circumstances, we cannot say the district court abused its discretion when it sentenced Diaz-Abreu to sixteen months' imprisonment.

**AFFIRMED.**