[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14349
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20006-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDUARDO BAEZ PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 8, 2013)

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Eduardo Baez Perez appeals his 210-month sentence imposed after he pled guilty to attempting to possess methamphetamine with intent to distribute and conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846.  Baez Perez argues his sentence, at the low end of the advisory guidelines range, was substantively unreasonable.[1]  After review, we affirm.

We review the reasonableness of a sentence under the deferential abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).  In reviewing for reasonableness, we first consider whether the district court committed any significant procedural error and then whether the sentence is substantively unreasonable under the 18 U.S.C. § 3553(a) factors and the totality of the circumstances.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).[2]

The abuse of discretion standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error in judgment."  United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation

---

[1]Defendant Baez Perez does not argue that his sentence is procedurally unreasonable or raise any procedural error at his sentencing.

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

marks omitted). We ordinarily expect a sentence within the guidelines range to be reasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). The party challenging the sentence bears the burden of proving that the sentence is unreasonable. Id.

Baez Perez's sole argument that his sentence is substantively unreasonable relies on Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558 (2007).[3] In Kimbrough, the Supreme Court upheld a district court's decision to grant a downward variance based on the district court's finding that the 100:1 sentencing disparity between crack and powder cocaine in the Sentencing Guidelines was disproportionate and unjust. 552 U.S. at 93, 111, 128 S. Ct. at 565, 576. Noting that the Sentencing Commission "did not take account of 'empirical data and national experience'" in formulating the crack cocaine guideline provisions and had itself subsequently criticized the crack/powder disparity as "disproportionately harsh," the Supreme Court concluded that "it would not be an abuse of discretion for a district court to conclude . . . that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." Id. at 109-10, 128 S. Ct. at 575.

---

[3]Because Baez-Perez did not raise his Kimbrough-style challenge at sentencing, the government urges us to review it only for plain error. We need not address this contention because Baez Perez's sentence is substantively reasonable even under the abuse of discretion standard.

3

Relying on <u>Kimbrough</u>, Baez Perez contends that the district court was <u>required</u> to impose a sentence below his advisory guidelines range of 210 to 262 months because the drug quantity table in U.S.S.G. § 2D1.1(c), which was used to determine his base offense level, creates a similar sentencing disparity between "methamphetamine (actual)" and methamphetamine mixtures.

Section 2D1.1's drug quantity table requires ten times the weight of a methamphetamine mixture to result in the same offense level as "methamphetamine (actual)." <u>See generally</u> U.S.S.G. § 2D1.1(c). For example, to receive an offense level 38, the offense must involve 15 kilograms of methamphetamine or 1.5 kilograms of methamphetamine (actual). <u>Id.</u> § 2D1.1(c)(1). Note (B) to the drug quantity table explains that the term "'Methamphetamine (actual)' refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance" and instructs the district court, "[i]n the case of a mixture or substance containing . . . methamphetamine," to "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." U.S.S.G. § 2D1.1(c), n.(B). The net effect of Note (B) is to increase the offense level for methamphetamine traffickers whose offenses involved purer methamphetamine mixtures.

4

In Baez Perez's case, the drug quantity table set his offense level at 34 based on the total weight of the methamphetamine mixture (2,227 grams) and at 38 based on the weight of the "methamphetamine (actual)" (1,763 grams). Baez Perez does not dispute that the district court properly used an offense level of 38, pursuant to U.S.S.G. § 2D1.1(c) and Note (B), to calculate his advisory guidelines range. Instead, Baez Perez argues that, like in Kimbrough, the 10:1 ratio between methamphetamine mixture and methamphetamine (actual) in § 2D1.1(c)'s drug quantity table creates an "unwarranted" sentencing disparity.

Baez Perez does not, however, point to any evidence that the disparity here is unwarranted. Baez Perez incorrectly claims that "the Guidelines are basically silent as [to] why" purer methamphetamine mixtures are assigned higher offense levels. In fact, the commentary to § 2D1.1(c) explains why purer drug mixtures may call for longer sentences. Specifically, the commentary notes that an upward departure may be warranted for drug mixtures of unusually high purity, except that an upward departure is not appropriate for methamphetamine mixtures because the drug quantity table already "provides for the consideration of [the] purity" of methamphetamine mixtures. U.S.S.G. § 2D1.1, cmt. n.26(C). The commentary goes on to explain that drug purity "is probative of the defendant's role or position in the chain of distribution" and "[s]ince controlled substances are often diluted and combined with other substances as they pass down the chain of distribution,

5

the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." Id. More importantly, though, Baez Perez has not shown that the drug quantity table's 10:1 mixture-to-pure methamphetamine ratio has been subject to the kinds of criticism discussed in Kimbrough.

In any event, even assuming arguendo that the drug quantity table's 10:1 mixture-to-pure methamphetamine ratio is not supported by empirical evidence, this fact alone would not make Baez Perez's sentence unreasonable. In Kimbrough, "the Supreme Court held that the lack of empirical evidence was one factor that a district court could consider in exercising its post-Booker right to depart from the guidelines." United States v. Snipes, 611 F.3d 855, 870 (11th Cir. 2010) (emphasis omitted). In short, Kimbrough merely permits a district court, in its discretion, to vary from a guidelines range if it finds a lack of empirical support, but it does not require it to do so. See Kimbrough, 552 U.S. at 109-10, 128 S. Ct. at 575; Pugh, 515 F.3d at 1201 n.15 (stating that under Kimbrough "a district judge has the authority to deviate from the Guidelines in a particular crack cocaine case because the Guidelines range for these offenses . . . did not take account of empirical data and national experience" (quotation marks omitted)).

Under these circumstances, we cannot say the district court abused its discretion when it imposed a 210-month sentence, at the low end of the advisory guidelines range.

**AFFIRMED.**