[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14152
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cr-00117-MHC-CMS-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JENNIFER SCOTT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 26, 2018)

Before MARTIN, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jennifer Scott pled guilty to conspiring to defraud the United States in

violation of 18 U.S.C. § 371, and on January 24, 2017, the district court sentenced

her to 3 years' probation, the first year of which was to be served in home confinement. On August 7, 2017, Ms. Scott's probation officer filed a petition to revoke her probation, alleging nine separate violations of her location monitoring occurring between February 14 and July 28. Following a revocation sentencing hearing, the district court revoked Ms. Scott's probation and sentenced her to 7 months' in prison. Ms. Scott appeals that sentence as substantively unreasonable, and also argues that the district court abused its discretion in revoking her probation. After reviewing the record and the parties' arguments, we affirm.

## I

Ms. Scott and her sister, Tamika Wright, co-owned a store in Fairburn, Georgia that participated in the Georgia Women, Infants, and Children ("WIC") Program. Due to her role in obtaining and depositing WIC vouchers for which her store was not qualified, Ms. Scott was indicted on charges of conspiring to defraud the United States (18 U.S.C. § 371), stealing money of the United States (18 U.S.C. § 641), and conspiring to commit money laundering (18 U.S.C. § 1956(h)). Pursuant to a plea agreement, Ms. Scott pled guilty to the single charge of conspiracy to defraud, and the government dismissed the remaining charges.

Based on her plea, Ms. Scott faced a statutory maximum sentence of 5 years, *see* 18 U.S.C. § 371, and the Sentencing Guidelines provided an applicable advisory range of 21-27 months' imprisonment. The government requested a

2

sentence of approximately 12 months. The district court, however, did not impose any sentence of imprisonment, instead imposing a 3-year term of probation, with the first year to be spent in home confinement. Ms. Scott had permission to leave her home for work, medical appointments, religious services, or visits with her lawyer. At the sentencing hearing, the district court stated, "I think you deserve a little bit of a break here," while making clear that "being confined to your home, on location monitoring, except with the exceptions as I've stated, is punishment. So I think you are being punished for what you did." D.E. 62 at 30, 34.

The district court told Ms. Scott that it would not tolerate any violations of her probation: "I want you to be very clear, though. I don't expect you ever to be back in this court again. If you ever come back in this court again, I'm going to tell you, you're not going to get a break. You're going to go straight to jail." *Id*. at 30. Within a little over six months, however, Ms. Scott was suspected of violating her home confinement 9 times, and her probation officer filed a motion to revoke Ms. Scott's probation.

Ms. Scott disputed a few of the alleged violations, but admitted a majority of them, claiming generally that she had difficulties communicating with her probation officer, which resulted in misunderstandings regarding her home confinement restrictions. These violations constituted grade C probation violations. *See* U.S.S.G. § 7B1.1(a)(3); D.E. 81 at 6. Accordingly, the Sentencing Guidelines

3

provided an advisory range of 4-10 months in prison. *See* U.S.S.G. § 7B1.4(a). The statutory maximum remained 60 months, *see* 18 U.S.C. § 3565(a)(2), and the government requested that the district court revoke Ms. Scott's probation and impose a term of imprisonment of 12 months. The district court reviewed the requisite sentencing factors, *see* 18 U.S.C. § 3553(a), and ultimately imposed a mid-range sentence of 7 months.

## II

We review a district court's decision to revoke probation for an abuse of discretion. *See United States v. Holland*, 874 F.2d 1470, 1473 (11th Cir. 1989) ("the ultimate decision to revoke probation is entrusted to the sound discretion of the district court and should be disturbed only upon a finding of abuse of that discretion"). In making that decision, the district court "should consider whether the probationer made a 'good faith' effort to comply with the terms of [her] probation and whether there are mitigating circumstances which excuse [her] noncompliance." *Id*. Importantly, though, "[i]n a probation revocation proceeding, all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of the probation; evidence that would establish guilt beyond a reasonable doubt is not required." *United States v. Sharif*, 893 F.2d 1212, 1215 (11th Cir. 1990).

Here, there was ample evidence that could reasonably satisfy the district court that Ms. Scott's conduct had not been 'as good as required' by the terms of her probation. At the original sentencing hearing, the court had specifically listed the events for which Ms. Scott would be allowed to leave her house, and Ms. Scott acknowledged these restrictions. Yet, according to Ms. Scott's probation officer, on May 7, instead of attending church as she was authorized to do, Ms. Scott deviated from her schedule and performed an unauthorized activity. On July 15 and 18, Ms. Scott traveled to unauthorized residential areas after work and before returning home. On July 20, Ms. Scott was to perform 5 hours of community service, yet instead she drove to an unauthorized area and then a restaurant, never performing any community service work. On July 22, she failed to return home from a funeral on time. When confronted about this last episode, Ms. Scott claimed she was stuck in traffic, but her location monitoring records revealed that she had not even left the funeral until after the time she was required to be home.

These episodes, along with several other similar ones, provided the district court with more than enough evidence to reasonably conclude that Ms. Scott showed a "pattern and practice" of violating her probation. D.E. 81 at 35. *See also Holland*, 874 F.2d at 1473-74 (affirming revocation of probation following 3 violations of probation restrictions). This factual finding, moreover, was not clearly erroneous. *See id.* ("in evaluating the decision to revoke probation, we will accept

5

all findings of fact made by the district court unless we determine they are clearly erroneous"). The district court's oratory concerning the "break" it was giving her at the original sentencing hearing put Ms. Scott on notice that probation with home confinement was to be viewed as a form of punishment, and not to be taken lightly. And Ms. Scott admitted most of the 9 alleged violations.

There also was sufficient evidence for the district court to reject Ms. Scott's argument that she put forth a "good faith effort" to comply with the probation restrictions. The court specifically stated that it could accept that argument "if there were one or two" violations, but not 9. D.E. 81 at 19. The court noted that Ms. Scott "doesn't get with the probation officer to try to work things out if there are issues there," and that Ms. Scott's actions reflected an attitude that probation was "just a terrible inconvenience" and was "upsetting [her] lifestyle." *Id*. at 17-18. These findings were not clearly erroneous. The court emphasized that "the average person that would be in her situation would have said . . . I can't do this without getting permission to do this because I'm going to be in big trouble," yet Ms. Scott did not receive authorization from her probation officer for a single deviation. *Id*. at 19. In addition, Ms. Scott had received warnings from her probation officer about her violations in April and May, yet she had at least 6 more violations in the subsequent 3 months. Thus, the district court did not clearly err in finding that Ms. Scott did not put forward a good faith effort to comply.

Despite Ms. Scott's assertion to the contrary, the district court also considered her mitigating circumstances when it analyzed the § 3553 factors and determined her sentence. Ms. Scott explained that she needed to take care of her son, and that she suffered from significant mental health problems. Far from ignoring these factors, the district court decided to let her self-report to prison in order to "let her make arrangements that she needs to make for her family and give her that ability." D.E. 81 at 37. Further, Ms. Scott's original self-report date was October 25, 2017, but she was granted three extensions, and was ultimately allowed to delay reporting to prison until January 12, 2018, in order to properly take care of the arrangements for her son. *See* D.E. 77, 80, 88, 97. The district court also directed Ms. Scott to participate in a mental health treatment program under the United States Probation Office upon her release from prison. And the district court further recognized both these considerations when it summarized the sentence and compared it to what was the original advisory guidelines range. Thus, the district court did not abuse its discretion by revoking Ms. Scott's probation.

## III

We review a sentence imposed upon the revocation of probation for reasonableness. *See United States v. Sweeting*, 437 F.3d 1105, 1106-07 (11th Cir. 2006). The burden of establishing the unreasonableness of the sentence lies with the defendant. *See United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).

We "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," *Gall v. United States*, 552 U.S. 38, 51 (2007), and we measure the reasonableness of a sentence against the § 3553 factors and the district court's evaluation of those factors. *See Pugh*, 515 F.3d at 1188-89.

Here, the district court adequately considered the § 3553 sentencing factors, which include reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence to criminal conduct, and protecting the public from further crimes of the defendant. *See* § 3553(a)(2)(A)-(C); D.E. 81 at 36-37. The district court emphasized that the sentence reflected the principle of "compl[iance] with the law." D.E. 81 at 35. The court considered the alternative of re-instating probation, yet concluded that would not accomplish the goal of promoting respect for the law, because Ms. Scott had already broken the law and violated the terms of her probation. The court considered both specific and general deterrence. It stated that the term of imprisonment would serve to incentivize Ms. Scott to better work through her personal struggles and comply with rules and regulations in the future. The court also recognized that re-imposing probation without confinement would send a message to other similar offenders that they would not have to comply with probationary restrictions, *see id*. at 20-21, and "this is a serious situation and I've got to send a message." *Id*. at 36.

8

The district court also considered the seriousness of the crime and the need to protect the public when it specifically explained that it was sentencing Ms. Scott to a mid-range term of 7 months because she had not committed another crime or tested positive for drugs, thus not warranting the high level of the guidelines range. *See id*. The court recognized that Ms. Scott was not a danger to the public, yet it also determined that the significant number of violations warranted greater than the low end of the advisory range.

Thus, the district court adequately considered and weighed the § 3553 factors in determining Ms. Scott's sentence. "We will not second guess the weight (or lack thereof) that the judge accorded to a given factor under § 3553(a), as long as the sentence ultimately imposed is reasonable in light of *all* the circumstances presented." *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010). Ms. Scott's sentence is significantly less than the statutory maximum or the advisory guidelines range for her conviction, less than the sentence twice requested by the government, and in the middle of the advisory range for her probation violations. It is not substantively unreasonable.

## IV

The district court did not abuse its discretion by revoking Ms. Scott's probation, and the 7-month sentence it imposed is not substantively unreasonable. Accordingly, we affirm Ms. Scott's sentence.

**AFFIRMED.**